1   NOSSAMAN LLP
    CHRISTOPHER D. HUGHES (SBN 254864)
2   chughes@nossaman.com
3   621 Capitol Mall, Suite 2500
    Sacramento, CA 95814
4   Telephone:    916.442.8888
    Facsimile:    916.442.0382
5
6   **WINSTEAD PC**
    MATTHIAS KLEINSASSER (*pro hac vice* forthcoming)
7   mkleinsasser@winstead.com
    300 Throckmorton Street, Suite 1700
8   Fort Worth, TX 76102
    Telephone:    817.420-8281
9
10  Attorneys for Plaintiff UNIT 53, INC.
11
12
13                    **UNITED STATES DISTRICT COURT**
14                    **EASTERN DISTRICT OF CALIFORNIA**
15

| | |
|---|---|
| UNIT53, INC., | Case No: _____ |
| Plaintiff, | **PLAINTIFF'S COMPLAINT FOR AVOIDANCE OF FRAUDULENT LIEN** |
| v. | |
| PACT CAPITAL, INC., a California corporation; Z BLINDS COMPANY, INC., a California corporation; SA9 PROPERTIES, LLC, a California corporation; LEVON ZEKIAN, an individual; and SAM BEHPOOR, an individual, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

        Plaintiff Unit 53, Inc. ("Unit 53" or "Plaintiff") files its Complaint against Defendants

PACT Capital, Inc. ("PACT Capital"), Z Blinds Company, Inc. ("Z Blinds"), SA9 Properties, LLC

("SA9"), Levon Zekian ("Zekian"), Sam Behpoor ("Behpoor" and, collectively with Z Blinds,

SA9 and Zekian, the "Z Blinds Defendants" and collectively with PACT Capital, "Defendants")

and shows:

**PRELIMINARY STATEMENT**

1.      This is a suit to avoid a promissory note and deed of trust on real property located in San Joaquin County, California, and to prevent an impending foreclosure on that property based on the avoidable lien.

2.      The real property that is the subject of this suit was fraudulently transferred by the original owner, Run Roadlines, Inc., to a corporate affiliate named 3515 HWY 99, LLC. The purpose of the transfer was to prevent Plaintiff from being able to use the real property to satisfy obligations owed by Run Roadlines under a shipping container lease.

3.      Plaintiff has filed a separate suit in the Eastern District against Run Roadlines (the original owner) and 3515 HWY 99 (the transferee) for, among other claims, this fraudulent transfer of the real property.  Because the defendants in that suit repeatedly and blatantly violated Court orders regarding discovery obligations and related matters, the Court struck the defendants' answers and ordered that Plaintiff be awarded a default judgment. Plaintiff has filed a supplemental brief in that suit outlining the relief Plaintiff believes should be awarded in this default judgment, which includes a finding that the transfer of the real property from Run Roadlines to 3515 HWY 99 was an avoidable fraudulent transfer.

4.      After receiving the fraudulently transferred real property, 3515 HWY 99 issued a promissory note and deed of trust to PACT Capital, which subsequently assigned the note and deed of trust to the Z Blinds Defendants. The issuance of this note and deed of trust were intended to hinder, delay, or defraud Plaintiff and its collection efforts, and were issued while 3515 HWY 99 was insolvent and without receiving reasonably equivalent value. The Z Blinds Defendants are now moving forward with foreclosing their avoidable lien.  Accordingly, Plaintiff files the present suit to avoid the Defendants' note and deed of trust and to prevent the Z Blinds Defendants from foreclosing an avoidable lien.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a) because the Plaintiff and the Defendants are citizens of different states (Delaware and Arkansas for Plaintiff and California for Defendants) and because the amounts in controversy

1    exceed $75,000.

2        6.    Defendants are subject to personal jurisdiction in California because Defendants

3    are citizens of California.  Specifically, Defendant PACT Capital is a California corporation with

4    its principal place of business in Fresno, California. Defendant Z Blinds is a California

5    corporation with its principal place of business in Fresno, California. Defendant SA9 is a

6    California limited liability company. Based on public records filed with the California Secretary

7    of State in 2025, SA9's sole member is Zekian, who resides in California. Defendant Zekian is a

8    resident of Fresno, California. Defendant Behpoor is a resident of Madera, California.

9        7.    The Defendants are also subject to personal jurisdiction in California because a

10    substantial portion of the acts and omissions forming the basis of this action—PACT Capital's

11    acquisition of and subsequent assignment to the Z Blinds Defendants of a note and deed of trust

12    on real property located in San Joaquin County, California—occurred, at least in part, in

13    California.

14        8.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because a

15    substantial portion of the acts and omissions forming the basis of this action—PACT Capital's

16    acquisition of and subsequent assignment to the Z Blinds Defendants of a deed of trust in real

17    property located in San Joaquin County, California—occurred, at least in part, in San Joaquin

18    County, California, where the real property is located.

19                                        **PARTIES**

20        9.    Plaintiff Unit 53, Inc. is a Delaware corporation with its principal place of business

21    in Tontitown, Arkansas.

22        10.    Defendant PACT Capital Inc. is a California corporation with its principal place

23    of business in Fresno, California.  PACT Capital can be served with process by serving its

24    registered agent, Tyler Shegerian, at 8050 N. Palm Ave., Suite 100, Fresno, California, or

25    wherever he may be found.

26        11.    Defendant Z Blinds Company, Inc. is a California corporation with its principal

27    place of business in Fresno, California.  Z Blinds can be served with process by serving its

28    registered agent, Karin Bouskos, at 680 P Street, Suite B, Fresno, California, or wherever she may

be found.

12.     Defendant SA9 Properties, LLC is a California limited liability company. Defendant SA9 can be served with process by serving its registered agent, Law Offices of Gerard V. Kassabian, at 15260 Ventura Blvd., Suite 960, Sherman Oaks, California, or wherever he may be found.

13.     Defendant Levon Zekian is a natural person who is domiciled in, Fresno, California.  Defendant Zekian can be served with process at 680 P Street, Suite B, Fresno, California, or wherever he may be found.

14.     Defendant Sam Behpoor is a natural person who is domiciled in Madera, California.  Defendant Behpoor can be served with process at 702 Alpine Way S, Madera, California, or wherever he may be found.

## FACTUAL BACKGROUND

### A.     Unit 53 obtains an interest in the Property in 2023 from RRI

15.     Unit 53 is in the shipping container business, leasing shipping containers to various companies around the globe. The current dispute has its origins in a lease agreement entered into between Plaintiff Unit 53 and a company called Run Roadlines, Inc. ("RRI"), in January 2023, wherein Unit 53 agreed to lease RRI 650 shipping containers for a term of 5 years. Unfortunately, RRI almost immediately defaulted under the terms of that lease agreement, failing to make even a single payment. RRI's default ultimately resulted in millions of dollars of past-due monthly rental payments and interest, and significant damages, being owed to Unit 53.

16.     Despite RRI's default, Unit 53 tried in good faith to work toward a resolution with RRI rather than immediately filing suit. As part of these efforts, on October 3, 2023, Unit 53 and RRI entered into an Option Agreement for Deed of Trust on Real Estate (the "Option Agreement"). Under the Option Agreement, RRI granted Unit 53 the exclusive option to secure a deed of trust on certain real property located at 3515 S. Hwy 99 Stockton, California, 95215 (the "Property") owned by RRI. A copy of the Option Agreement is attached as **Exhibit A**. Upon information and belief, according to a recent appraisal the value of the Property is estimated to be valued at approximately $2.2 million. Under the Option Agreement, Unit 53's exclusive option

to secure a deed of trust on the Property would become exercisable no later than November 10, 2023, or earlier if notified by RRI. Further, once exercised, the deed of trust would remain in place until RRI became current on all payments owed to Unit 53 under the lease agreement.

**B.    RRI encumbers the Property with a different deed of trust in breach of Unit 53's exclusive option**

17.    Unit 53 subsequently notified RRI that it was exercising its option to obtain a deed of trust on the Property. But despite agreeing to sign the appropriate documentation, RRI's representatives failed to execute the deed of trust in favor of Unit 53, as the Option Agreement required. Instead, RRI issued a deed of trust to another entity altogether—Farmers & Merchants Bank ("FMB"). The FMB Deed of Trust was recorded December 27, 2023—in direct violation of the Option Agreement, under which RRI had granted Unit 53 the exclusive option to obtain a deed of trust on the Property.

18.    RRI nevertheless continued to represent that it would honor the terms of the Option Agreement, indicating that Unit 53's lien could go into effect as soon as FMB removed its lien, which RRI represented "should be in the next few weeks." Upon information and belief, RRI had no intention of providing Unit 53 with its deed of trust on the Property. Rather, RRI was already orchestrating a scheme to transfer the ownership of the Property such that Unit 53 would never obtain the promised deed of trust, and RRI's debt would never be repaid.

19.    In fact, in February of 2024, RRI was already in discussions with Defendant PACT Capital concerning a loan for the purpose of a cash-out refinance of the FMB loan—but tellingly, the proposed "borrower" for the transaction was *not* to be RRI, but rather a "Single Purpose Entity owned by [RRI]." A copy of the Letter of Intent submitted to RRI from PACT Capital is attached hereto as **Exhibit B.**

20.    PACT Capital was well aware of the fact that the Property would no longer be owned by RRI when PACT Capital completed the transaction, even though the purpose of the loan was a "cash-out refinance of the [FMB] loan"—a loan between RRI as borrower and FMB as lender. Instead, as PACT Capital acknowledged, "it will be transferred to this new entity [3515 Hwy 99] at closing." *See* **Exhibit C** [Email from PACT Capital representative Lilia Medoza

63756976.v1

PCI_0090].

**C.    RRI transfers the Property to an insider entity—3515 Hwy 99—without providing any notice to Unit 53**

21.    Based on RRI's blatant breach of the Option Agreement and failure to remove the FMB lien as promised, Unit 53 demanded that RRI issue personal guaranties or security interests supporting RRI's outstanding obligations under the lease agreement. As a result, Manpreet Randhawa ("Randhawa"), one of the principals of RRI, issued a personal guaranty (the "Guaranty") to Unit 53, effective March 21, 2024, under which he guaranteed all of RRI's obligations under the lease agreement.

22.    But rather than removing the FMB Deed of Trust and issuing Unit 53 its deed of trust, RRI, through Randhawa, almost immediately began the process of transferring ownership of the Property to another entity altogether. Specifically, on April 12, 2024, barely three weeks after issuing the Guaranty and without any notice to Unit 53, Randhawa formed a new entity named 3515 Hwy 99 LLC ("3515 Hwy 99"). According to California Secretary of State records, Randhawa is the Registered Agent, Manager, and Chief Executive Officer of 3515 Hwy 99. He is also the Registered Agent, Chief Executive Officer, Chief Financial Officer, Secretary, and Director of RRI.

23.    On May 31, 2024, a deed was recorded in the San Joaquin County real property records showing the transfer of the Property from RRI to 3515 Hwy 99 (the "Transfer Deed"). The Transfer Deed is dated April 16, 2024, four days after 3515 Hwy 99 was formed. A copy of the Transfer Deed is attached as **Exhibit D.** The recording of the Transfer Deed followed directly on the heels of a May 14, 2024 letter sent by Unit 53's counsel to RRI and Randhawa demanding that RRI begin making payments owed to Unit 53 under the lease agreement or Unit 53 would have no choice to proceed with litigation. RRI did not respond to this letter, nor did it inform Unit 53 that it no longer owned the Property, having purportedly transferred the Property to 3515 Hwy 99.

**D.    3515 Hwy 99 encumbers the Property with yet another deed of trust**

24.    Meanwhile, on May 31, 2024, the same date the Transfer Deed was recorded, 3515

63756976.v1

Hwy 99 recorded a Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement with 3515 Hwy 99 as borrower and Defendant PACT Capital as lender (the "PACT Deed of Trust"). A copy of the PACT Deed of Trust is attached hereto as **Exhibit E.** The PACT Deed of Trust reflects a note amount of $1.2 million, secured by the Property.

25.    Also on May 31, 2024, PACT Capital recorded an Assignment of Deed of Trust (the "PACT Assignment"), by which it assigned all of its "rights, title, and interest" in the PACT Deed of Trust to the Z Blinds Defendants as follows: an undivided 41.667% interest to Defendant Z Blinds, an undivided 25.000% interest Defendant SA9, an undivided 16.667% interest Defendant Zekian, and an undivided 16.667% interest Defendant Behpoor. A copy of the PACT Assignment is attached hereto as **Exhibit F.**

26.    Less than a week later, on June 6, 2024, FMB released the FMB Deed of Trust on the Property. It is conceivable, that at least a portion the debt RRI owed to FMB was paid off by 3515 Hwy 99 using proceeds from the $1.2 million secured through the PACT Deed of Trust and PACT Assignment.

**E.    Unit 53 sues RRI, Randhawa and 3515 HWY 99 and the Court orders that Plaintiff is entitled to a default judgment**

27.    On June 17, 2024, Unit 53 filed suit against RRI and 3515 Hwy 99 for, among other claims, RRI's breach of the lease agreement and to recover the Property fraudulently transferred from RRI to 3515 Hwy 99. Unit 53 proceeded with discovery, but RRI, Randhawa, and 3515 Hwy 99 failed, on multiple occasions, to comply with the Court's orders regarding discovery, payment of attorneys' fees awarded to Unit 53, and other matters.

28.    Ultimately, Magistrate Judge Kim recommended that the defendants' answers in that suit be struck, entitling Unit 53 to a default judgment. On August 6, 2025, the Court adopted Judge Kim's findings and conclusions and ordered Unit 53 to submit supplemental briefing presenting the proposed terms of the default judgment. Unit 53 filed its supplemental briefing on August 27, 2025, which is currently pending before the Court for consideration. The supplemental briefing includes a request that the Court avoid the transfer of the Property from RRI to 3515 HYW 99.

63756976.v1

**F.**     **Defendants seek foreclosure on the Property based on their improper lien**

29.     While Unit 53's motion for sanctions was under consideration by the court, Unit 53 pursued discovery from several non-parties, including PACT Capital and Z Blinds, and issued subpoenas to both. Both PACT Capital and Z Blinds engaged in blatant delay tactics and produced incomplete documents in response to Unit 53's requests.

30.     While deliberately delaying its response to Unit 53's subpoena, Z Blinds, with the cooperation of the other Z Blinds Defendants, was preparing a Notice of Default and Election to Sell Under Deed of Trust (the "Notice of Default") to record in the real property records in San Joaquin County. A copy of the Notice of Default, recorded on June 24, 2025, is attached hereto as **Exhibit G.** Pursuant to the Notice of Default, the Property is in foreclosure as a result of 3515 Hwy 99's default on its obligations under the PACT Deed of Trust, and subject to sale after 90 days from the date of the recording of the Notice of Default.

31.     RRI, Randhawa, and 3515 HWY 99 appear to have limited assets to satisfy Unit 53's judgment. If the Z Blinds Defendants are permitted to foreclose their avoidable lien on the Property, Unit 53 will therefore suffer irreparable harm because one of, if not the most valuable asset belonging to these parties will be transferred to a third party. Accordingly, Unit 53 has filed the present suit, seeking to avoid the debt and the lien on the Property obtained through the PACT Deed of Trust and subsequently assigned via the PACT Assignment, and to enjoin the imminent foreclosure sale on the Property.

## CLAIMS FOR RELIEF

### First Claim for Relief
### Avoidance of Intentional Fraudulent Lien Under California Uniform Voidable Transactions Act (All Defendants)

32.     Unit 53 re-alleges and incorporates by reference all preceding paragraphs.

33.     Unit 53 is a creditor of 3515 Hwy 99, based upon RRI's transfer of the Property to 3515 Hwy 99, as well as Unit 53's direct claims against 3515 Hwy 99 for damages in the separate suit. *See* Cal. Civ. Code § 3439.01(c).

34.     3515 Hwy 99 incurred an obligation—the promissory note—to Defendant PACT Capital, secured by the Property via the PACT Deed of Trust, with actual intent to hinder, delay,

1    or defraud Unit 53 from asserting its interest in the Property and/or collecting amounts owed to it

2    by 3515 Hwy 99 and RRI, which fraudulently transferred the Property to 3515 HWY 99 in the

3    first place. *See* Cal. Civ. Code § 3439.04(a)(1). Defendant PACT Capital immediately assigned

4    all its interest and right to the Property via the PACT Deed of Trust to the Z Blinds Defendants.

5        35.    Numerous badges of fraud under Section 3439.04(b) are present here:

6        • At the time the obligation was incurred, the debtor—3515 Hwy 99—had been

7        threatened with suit by Unit 53—indeed, Unit 53 filed suit against 3515 Hwy 99

8        mere weeks after the obligation to PACT Capital was incurred.

9        • RRI/3515 Hwy 99 were already in the process of securing the refinance transaction

10       and removing/concealing assets from Unit 53 while at the same time giving Unit

11       53 a Guaranty of RRI's obligations by Randhawa, their principal.

12       • On information and belief, the value of the consideration received by 3515 Hwy

13       99 was less than reasonably equivalent to the value of the Property, as a substantial

14       portion of the funds received went to pay off the FMB debt owed by RRI.

15       • On information and belief, 3515 Hwy 99 was insolvent or became insolvent

16       shortly after the obligation was incurred.

17   Further, because RRI fraudulently transferred the Property to 3515 Hwy 99, 3515 Hwy 99 cannot

18   include the Property as an asset, and therefore, upon information and belief, effectively had no

19   assets at the time the obligation was incurred. Cal. Civ. Code § 3439.02.

20       36.    Unit 53 seeks avoidance of the obligation incurred, and the deed of trust issued,

21   by 3515 Hwy 99 via the PACT Deed of Trust and related promissory note, and subsequently

22   assigned via the PACT Assignment, to the extent necessary to satisfy its claim.  Cal. Civ. Code §

23   3439.07(a)(1).  Unit 53 further seeks, subject to applicable rules of equity and in accordance with

24   applicable rules of civil procedure, an injunction against further disposition by RRI, 3515 Hwy

25   99, or the Defendants, of the Property or its proceeds, and any other relief the circumstances may

26   require. Cal. Civ. Code §§ 3439.07a(3)(A), (C).

27

28

COMPLAINT
63756976.v1

**Second Claim for Relief**

**Avoidance of Constructive Fraudulent Obligation and Lien Under California Uniform Voidable Transactions Act (All Defendants)**

37.     Unit 53 re-alleges and incorporates by reference all preceding paragraphs.

38.     Unit 53 is a creditor of 3515 Hwy 99, based upon RRI's transfer of the Property to 3515 Hwy 99, as well as Unit 53's direct claims against 3515 Hwy 99 for damages in the separate suit. *See* Cal. Civ. Code § 3439.01(c).

39.     3515 Hwy 99 incurred the obligation and issued the lien without receiving reasonably equivalent value in exchange, as all or a substantial portion of the funds received in exchanged went to satisfy RRI's debt to FMB. Additionally, at the time of the transfer 3515 Hwy 99: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of 3515 Hwy 99 were unreasonably small in relation to the business or transaction; (ii) intended to incur, or believed or reasonably should have believed that 3515 Hwy 99 would incur, debts beyond 3515 Hwy 99's ability to pay as they became due; and/or (iii) 3515 Hwy 99 was insolvent at the time the obligation was incurred or became insolvent shortly thereafter. Cal. Civ. Code §§ 3439.04(a)(2), 3439.05(s).

40.     Unit 53 seeks avoidance of the obligation incurred, and deed of trust issued, by 3515 Hwy 99 via the PACT Deed of Trust and related promissory note, and subsequently assigned via the PACT Assignment, to the extent necessary to satisfy its claim. Cal. Civ. Code § 3439.07(a)(1). Unit 53 further seeks, subject to applicable rules of equity and in accordance with applicable rules of civil procedure, an injunction against further disposition by RRI, 3515 Hwy 99, or the Defendants, of the Property or its proceeds, and any other relief the circumstances may require. Cal. Civ. Code §§ 3439.07a(3)(A), (C).

**CONDITIONS PRECEDENT**

41.     Any and all conditions precedent have been satisfied, waived, or are excused.

**DEMAND FOR JURY TRIAL**

42.     Unit 53 demands a trial by jury on all issues triable thereto.

63756976.v1

1

**<u>PRAYER FOR RELIEF</u>**

2        WHEREFORE, Plaintiff Unit 53 requests that, after trial by jury, the Court avoid the

3   obligation incurred, and deed of trust issued, by 3515 Hwy 99 via the PACT Deed of Trust and

4   related promissory note, and subsequently assigned via the PACT Assignment. Unit 53 further

5   seeks, subject to applicable rules of equity and in accordance with applicable rules of civil

6   procedure, an injunction against further disposition by RRI, 3515 Hwy 99, or the Defendants, of

7   the Property or its proceeds, and any other relief the circumstances may require to which Unit 53

8   is entitled under law or equity.

9

10     Date:     September 9, 2025            NOSSAMAN LLP
                                        CHRISTOPHER D. HUGHES

11

12                                      By: */s/ Christopher D. Hughes*

13                                      Christopher D. Hughes, Attorneys for
                                        Plaintiff, Unit 53 Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

63756976.v1

# Exhibit A



OPTION AGREEMENT FOR DEED OF TRUST ON REAL ESTATE

This Option Agreement ("Agreement") is made and entered into this 3rd day of October, 2023. ("Effective Date"), by and between:

Run Roadlines, a California corporation, with its principal place of business located at 2487 N Airport Way, Manteca CA 9533, hereinafter referred to as "Optionor," and Unit 53, a Delaware Corporation corporation, with its principal place of business located at 108 West 13th Street, Wilmington, DE, 19801, hereinafter referred to as "Optionee."

WHEREAS, Optionor is the owner of certain real property legally described as follows (the "Real Estate"):
3515 S. Hwy 99, Stockton, CA, 95215, with APN: 17909004

WHEREAS, Optionor is willing to grant Optionee the exclusive option to secure a Deed of Trust on the Real Estate, subject to the terms and conditions of this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. OPTION GRANT:
   Optionor hereby grants Optionee the exclusive option (the "Option") to secure a Deed of Trust on the Real Estate described above. The Option shall become exercisable no later than November 10th, 2023, or earlier if notified by the Optionor.

2. OPTION EXERCISE:
   Optionee may exercise the Option by delivering written notice of its intent to do so to Optionor. The Deed of Trust may be recorded anytime after the above specified date with the San Joaquin County Clerk Recorder's Office. The Optionee will assist and facilitate the recording and complete all necessary documents with the County, and provide them to Optionee for notarized signatures. Optionee will pay all required fees for recording the Deed of Trust.

3. TERMS OF DEED OF TRUST:
   Optionee's Deed of Trust allows them to hold a security interest on the property until the lease Run Roadlines has with Unit 53 on 650 rail containers is made current. At that time the Optionee's Deed of Trust will be removed.

4. CONFIDENTIALITY:

Both parties agree to keep all terms and conditions of this Agreement confidential, except as required by law.

6. GOVERNING LAW:

   This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflict of laws principles.

7. ENTIRE AGREEMENT:

   This Agreement constitutes the entire agreement between the parties and supersedes all prior oral or written agreements, understandings, or representations.

IN WITNESS WHEREOF, the parties hereto have executed this Option Agreement as of the Effective Date.

Run Roadlines


Sunny Vraitch - CEO
October 3, 2023




Unit 53




Kent Deloizer - Director
October 3, 2023

# Exhibit B

**PACT** CAPITAL

*Confidential*

**LETTER OF INTENT**
*For Discussion Purposes*
February 22, 2024

Run Roadlines Inc.
1326 Como Drive
Manteca, CA 95337
C/O Sunny Vraitch
e: sunny@runinc.com
c: 312-804-4746

**Re: Refinance of Truck yard and billboard in Stockton, CA.**

Dear Sunny,

PACT Capital Inc., ("PACT" or "Lender") is pleased to make available the following real estate **Senior Secured Credit Facility** to Run Roadlines Inc. of a to be created Single Purpose Entity ("SPE") LLC ("Borrower") for the refinance of truck yard property under the following terms and conditions:

| | |
|---|---|
| **Borrower(s):** | Single Purpose Entity owned by Run Roadlines Inc. |
| **Guarantor:** | Run Roadlines Inc. and Manpreet Randhawa |
| **Lender:** | PACT Capital Inc. ("PACT" or "Lender") |
| **Type of Credit:** | Real Estate Bridge Loan |
| **Collateral:** | 3515 S State Route 99 W Frontage Road, Stockton, CA 95215 (APN 179-090-04) |
| **Purpose:** | Cash-out refinance of current Farmers & Merchants Bank loan |
| **Loan Amount:** | The lesser of (i) $1,600,000.00 (One Million Six Hundred Thousand Dollars) or (ii) 55.00% of the As-Is Market Value approved by Lender of Lender Approved Collateral |
| **Loan Term:** | 12 months |
| **Amortization:** | Interest-Only |
| **Interest Rate** | WSJ Prime + 3.50% fixed at funding (*12.00% as of 2/18/24*) |
| **Payment Frequency:** | Monthly |
| **Prepayment Penalty:** | None |
| **Commitment Fee:** | 2.00% of Loan Amount ($32,000.00) |
| **Loan Documentation Fee:** | $5,000.00 *(est.)* |

**PACT** CAPITAL

*Confidential*

| | |
|---|---|
| **Conditions Precedent:** | Usual and customary for transactions of this type, including but not limited to receipt and analysis of the diligence outlined below: |

- Global debt-service coverage ratio not less than 1.30x on an Annual Basis
- 3 years of Personal Tax Returns for each Borrower and Guarantor
- 3 years of Business Tax Returns & Financials for each Borrower and Guarantor
- Personal Financial Statement from each Guarantor
- Copies of Bank/Brokerage/Liquidity Statements
- Satisfactory due diligence and background review on Borrowers and Guarantor
- Valuation Reports acceptable to Lender
- Environmental Reports acceptable to Lender
- All Entity Documentation
- Executed Leases, Tenant Estoppels, and SNDAs satisfactory to Lender
- Loan documentation satisfactory to Lender
- UCC lien search and satisfactory review by Lender

| | |
|---|---|
| **Costs:** | Borrower to pay fees, costs and expenses of Lender (including fees paid by Lender to third parties and allocated costs of Lender personnel) in connection with loan documentation negotiation and preparation and related diligence, including without limitation, appraisal fees, environmental site assessment fees, title and recording fees and other out-of-pocket expenses reasonably incurred by Lender. |

The proposed facilities are subject to the performance of such other due diligence as Lender deems necessary, Lender loan approval, and documentation acceptable to Lender.

**To proceed, we require a good faith deposit of $10,000.00 made payable to PACT Capital, Inc., to be used to engage all necessary and required 3rd party reports.**

This Letter of Intent is not intended to address all aspects of the facility and the documentation required but is designed as an outline for subsequent discussions between our respective organizations. As such, it cannot be construed as a commitment nor an offer to lend on the part of PACT. It is conceivable that certain information obtained during the processing of this request may cause changes to the proposed facility. Therefore, this Letter of Intent shall not be deemed a legally binding agreement between the parties for any purpose whatsoever.

We note that the closing of any proposed facility will be subject to various conditions precedent and loan documentation will include customary representations and warranties, covenants, events of default and other provisions as determined by PACT. This Letter of Intent by PACT is personal to the Borrower, Guarantor, and Subject Collateral and may not be transferred or assigned to any other individual or entity.



*Confidential*

**Accepted By: Run Roadlines, Inc.**

_____          _____
**By: Manpreet Randhawa**                                              **Date**
*President*



**PACT Capital, Inc.**



_____          *February 22, 2024_____*
**Adam Mortanian**                                              **Date**
*President*

# Exhibit C

**From:** Fleet Line Insurance Services Inc <cert@fleetlineinsurance.com>
**Sent:** Monday, April 22, 2024 2:24 PM
**To:** Lilia Mendoza <lilia.mendoza@pactcap.com>
**Cc:** Connor Haubursin <connor.haubursin@pactcap.com>; Sunny Vraitch <sunny@runinc.com>; Garry Sandhu <garry@fleetlineinsurance.com>
**Subject:** Re: Run Roadlines Refinance

Noted!

---

**From:** Lilia Mendoza <lilia.mendoza@pactcap.com>
**Date:** Monday, April 22, 2024 at 2:24 PM
**To:** Fleet Line Insurance Services Inc <cert@fleetlineinsurance.com>
**Cc:** Connor Haubursin <connor.haubursin@pactcap.com>, Sunny Vraitch <sunny@runinc.com>, Garry Sandhu <garry@fleetlineinsurance.com>
**Subject:** Re: Run Roadlines Refinance

Hello,

It is not currently owned by 3515 HWY 99 LLC, but it will be transferred to this new entity at closing, so yes it will need to be issued to 3515 HWY 99 LLC.

Thank you for checking!

**Lilia Mendoza**
*Assistant Vice President*
*Relationship Associate*
Office: 213-799-7228
Direct: 213-799-7228 ext. 121
Email: lilia.mendoza@pactcap.com

Secure File Upload: Click HERE



**Southern California** | 433 N Camden, Suite 1100 | Beverly Hills, CA 90210 | Main: 213-799-7228
**Central California** | 8050 N. Palm Ave. Suite 100 | Fresno, CA 93711 | Main: 559-775-7228

Connect with us on: LinkedIn

*CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this communication in error, please delete the email and its contents immediately. You are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited.*

# Exhibit D

Doc #:    2024-044924
05/31/2024 02:45:01 PM
Page 1 of 2    Fee: $92.00
Steve J. Bestolarides
San Joaquin County Recorder
Paid By:

**MAIL TAX STATEMENTS TO**

RUN ROADLINES INC., a California corporation

**RECORDING REQUESTED BY**

Placer Title Company
Escrow Number: P-621736

**AND WHEN RECORDED MAIL TO**

3515 HWY 99 LLC, a California limited liability company
2487 North Airport Way
Manteca, CA  95336

A.P.N.: 179-090-04                                              SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

The undersigned grantor(s) declare(s):
Documentary transfer tax is      $0.00 City Transfer Tax:              R&T Code 11911 – Changing Manner
( X ) Unincorporated Area   ( ) City of _____              in which Title is Held

(____) computed on full value of property conveyed, or
(____) computed on full value less value of liens and encumbrances remaining at time of sale.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **RUN ROADLINES INC., a California corporation**

Hereby GRANT(S) to **3515 HWY 99 LLC, a California limited liability company**

The land described herein is situated in the State of California, County of San Joaquin, unincorporated area, described as follows:

The South 10 acres of Lot 1, as shown upon Map entitled, "McCleary's Subdivision", filed for record January 12, 1906, in Vol. 3 of Maps and Plats, at Page 41, San Joaquin County Records.

EXCEPT THEREFROM the West 6-1/2 acres (the East line of said 6-1/2 acres being measured by line drawn parallel to the West line of said Lot).

ALSO EXCEPT THEREFROM that portion of said land described in Deed to the State of California, recorded April 17, 1931, in Book of Official Records, Vol. 368, Page 372, San Joaquin County Records.

ALSO EXCEPT THEREFROM that portion of said land described in Deed to the State of California, recorded September 23, 1954, in Book 1671 of Official Records, Page 6, San Joaquin County Records.

ALSO EXCEPT THEREFROM that portion of said land described in Deed to the State of California, recorded August 24, 2011, as Document No. 2011-102257, San Joaquin County Records.

APN:  179-090-04

CA – Correction Deed

Dated: April 16, 2024

Run Roadlines, Inc., a California corporation

By: _____
Manpreet Randhawa, CEO/Secretary

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
|---|

State of California )
                     ) ss.
County of San Joaquin )

On _____ APRIL 16, 2024 _____ before me,
_____ GAVINA FRANKLIN _____,
Notary Public personally appeared _____ MANPREET RANDHAWA _____
_____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

SIGNATURE _____

GAVINA FRANKLIN
COMM. #2373597
Notary Public - California
San Joaquin County
My Comm. Expires Oct. 1, 2025

Page 2 of 2 - 4/16/2024                                        CA – Correction Deed

# Exhibit E

Doc #: 2024-044925

Case 2:25-cv-02591-DJC-CSK    Document 61/2021e02:05/00/25M    Page 25 of 76

Page 1 of 29   Fee: $322.00
Steve J. Bestolarides
San Joaquin County Recorder
Paid By:

**RECORDING REQUESTED BY:**

eRecording Partners Network (ePN)
Placer Title Company
Branch Number: 2110

**WHEN RECORDED MAIL TO:**
PACT Capital
8050 N Palm Ave Suite 100
Fresno, CA 93711

Order No: P-621736

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

(Please fill in document title(s) on this line)

☐ Exempt from fee per GC27388.1(a)(2) due to being recorded in connection with concurrent transfer that is subject to the imposition of documentary transfer tax, or,

☐ Exempt from fee per GC27388.1(a)(1) due to the maximum fees being paid on documents in this transaction, or,

☒ Partially exempt from fee per GC27388.1(a)(1). Only 150.00 to be charged as $75.00 in fees has been paid on documents recorded immediately prior hereto or,

☐ Exempt from fee per GC27388.1(a)(2) due to being recorded in connection with concurrent transfer that is a residential dwelling to an owner-occupier, or,

☐ Exempt from the fee per GC27388.1(a) (1); Not related to real property, or,

☐ Exempt from fee under GC27388.1(a)(1) for the following reasons:

NOTE: The following exemptions may not be acceptable for use in all counties:

☐ Exempt from fee per GC27388.1 due to being recorded in connection with a transfer that was subject to documentary transfer tax which was paid on document recorded previously on (date) as document number of Official Records, or,

☐ Exempt from fee per GC27388.a due to the maximum fees having been paid on documents in the transaction(s) recorded previously on (date) as document number(s) of Official Records, or,

☐ Partially exempt from fee per GC27388.1. Only $75.00 to be charged as $150.00 in fees having been paid on documents in this transaction(s) recorded previously on (date) as document number(s) of Official Records, or,

☐ Exempt from fee per GC27388.1 due to it being recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier. The recorded document transferring the dwelling to the owner-occupier was recorded on (date) as document number(s).

THIS PAGE ADDED TO PROVIDE SENATE BILL 2 EXEMPTION INFORMATION
(Additional recording fee applies)

**PCI_0030**

Recording requested by:
**PLACER TITLE COMPANY**

WHEN RECORDED, RETURN TO:

PACT Capital, Inc.
8050 North Palm Avenue, Suite 100
Fresno, California 93711

Loan No. RR-004
Property ID No.: 179-090-040-000

P-621736-DE

### DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

Note Amount:       **$1,200,000.00**
Property Address:  **3515 South St Rt 99 West Frontage Road, Stockton, California 95215**

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH THE CALIFORNIA UNIFORM COMMERCIAL CODE.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Security Instrument" or "Deed of Trust") is made as of May 17, 2024, among 3515 HWY 99 LLC, a California limited liability company ("Borrower"), whose address is 2487 N Airport Way, Manteca, California 95336; Geraci LLP, as trustee ("Trustee"); and PACT Capital Inc., as beneficiary ("Lender"), whose address is PACT Capital, Inc., 8050 North Palm Avenue, Suite 100, Fresno, California 93711.

### TRANSFER OF RIGHTS IN THE PROPERTY

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations (as defined in this Security Instrument), Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the state where the Mortgaged Property is located. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Security Instrument, a security interest in and to all of Borrower's

---

1

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials: [signature]

84

right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Security Instrument on any of the Mortgaged Property. Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS SECURITY INSTRUMENT, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

## DEFINITIONS.

1.  **Definitions.** For purposes of this Security Instrument, each of the following terms shall have the following respective meanings:

    **1.1** "**Attorneys' Fees.**" Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Security Instrument.

    **1.2** "**Borrower.**"

        1.2.1.   The named Borrower in this Security Instrument;

        1.2.2.   The obligor under the Note, whether or not named as Borrower in this Security Instrument; and

        1.2.3.   Subject to any limitations of assignment as provided for in the Loan Documents, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such Person.

    All references to Borrower in the remainder of the Loan Documents shall mean the obligor under the Note.

    **1.3** "**Event of Default.**" An Event of Default as defined in the Loan Agreement.

    **1.4** "**Fixtures.**" All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the state where the Mortgaged Property is located, including the Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

    **1.5** "**Governmental Authority.**" Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

2

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

v184

Borrower's Initials: 

PCI_0032

**1.6** "Governmental Requirements." Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

**1.7** "Impositions." All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Security Instrument may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

**1.8** "Improvements." Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Trustee under this Security Instrument.

**1.9** "Indebtedness." The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

**1.9.1.** The Note (including, without limitation, any prepayment premium, late payment, and other charges payable under the Note);

**1.9.2.** The Loan Agreement;

**1.9.3.** This Security Instrument and all other Loan Documents;

**1.9.4.** All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

**1.9.5.** Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Security Instrument, including, but not limited to, funds advanced to protect the security or priority of the Security Instrument; and

**1.9.6.** Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

**1.10** "Land." The real estate or any interest in it described in Exhibit "A" attached to this Security Instrument and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

**1.11** "Leases." Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

---

3

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

v.184

Borrower's Initials: _____

PCI_0033

1.12    "<u>Lender</u>." The named Lender in this Security Instrument and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Security Instrument, whether or not named as Lender in this Security Instrument, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such Person.

1.13    "<u>Loan</u>." The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

1.14    "<u>Loan Agreement</u>." The Loan and Security Agreement given by Borrower evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments thereto.

1.15    "<u>Loan Documents</u>." Collectively, this Security Instrument, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan. Notwithstanding the foregoing, when used in the definitions of Indebtedness and Obligations, and in relation to the discussion of the Obligations and Indebtedness that are secured by this Security Instrument, the term "Loan Documents" specifically excludes any Guaranty and the Environmental Indemnity Agreement dated the date of this Security Instrument, executed by Borrower and/or any guarantor of the Loan, each of which are not secured by this Security Instrument.

1.16    "<u>Mortgaged Property</u>." The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as:    **3515 South St Rt 99 West Frontage Road, Stockton, California 95215**
                       **Property ID No.: 179-090-040-000**

together with:

1.16.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

1.16.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

---

4

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

v.184

Borrower's Initials: [signature]

PCI_0034

1.16.3.  All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

1.16.4.  Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

1.16.5.  All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.16.6.  All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.16.7.  Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the Loan secured by this Security Instrument or are required to be maintained by Borrower as provided below in this Security Instrument; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.16.8.  If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit "A" attached to this Security Instrument (the "Leasehold") including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.16.9.  All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part

5

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials:

of the Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Mortgaged Property;

1.16.10.  All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

1.16.11.  All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.16.12.  All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in the Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.16.13.  All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.16.14.  All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.16.15.  All proceeds of any of the foregoing.

As used in this Security Instrument, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

1.17    "Note." The Secured Note payable by Borrower to the order of Lender in the principal amount of One Million Two Hundred Thousand and 00/100 Dollars ($1,200,000.00), which matures on June 1, 2025, evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Secured Note.

1.18    "Obligations." Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender or Trustee as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this Security Instrument whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender whether or not set forth in this Security Instrument; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Security Instrument.

The Obligations specifically exclude any Guaranty and the Environmental Indemnity Agreement dated the date of this Security Instrument, executed by Borrower and/or any guarantor of the Loan, which is not secured by this Security Instrument.

1.19    "Permitted Encumbrances." At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances,

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004                                    v184

Borrower's Initials:

and restrictions on the Mortgaged Property that are allowed by Lender to appear in Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Security Instrument; and (c) liens in favor of or consented to in writing by Lender.

**1.20** **"Person."** Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

**1.21** **"Personalty."** All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the Uniform Commercial Code.

**1.22** **"Rents."** All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

**1.23** **"Uniform Commercial Code."** The uniform commercial code as found in the statutes of the state in which the Mortgaged Property is located.

**1.24** **"Water Rights."** All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

Any terms not otherwise defined in this Security Instrument shall have the meaning given them in the Loan Agreement and Note, dated of even date herewith between Borrower and Lender.

## UNIFORM COVENANTS

7

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

184

Borrower's Initials: _____

2.    **Repair and Maintenance of Mortgaged Property.**   Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under this Security Instrument; (d) pay when due all claims for labor performed, services performed, equipment provided and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Security Instrument.

3.    **Use of Mortgaged Property.**   Unless otherwise required by Governmental Requirements or unless Lender otherwise provides prior written consent, Borrower shall not change, nor allow changes in, the use of the Mortgaged Property from the current use of the Mortgaged Property as of the date of this Security Instrument.   Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

4.    **Condemnation and Insurance Proceeds.**

   4.1    **Assignment to Lender.**   The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Security Instrument, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Security Instrument, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $2,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join

8

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials:

Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

    **4.2**    **Insurance Payments**. All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

    4.2.1.    Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of any one of which shall constitute a default under this Security Instrument, the Loan Agreement, the Note, and any other Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this Section shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

    4.2.2.    If fewer than all conditions (a) through (i) above are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Security Instrument in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this Section to make any funds available to

9

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials:

restore the Mortgaged Property, then all of conditions (a) through (i) above shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

**4.3    Material Loss Not Covered.** If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

**4.4    Total Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Security Instrument in such order as Lender may determine, until the Indebtedness secured by this Security Instrument has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Security Instrument shall be paid to Borrower as its interest may then appear.

**4.5    Partial Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("Awarded Funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such Awarded Funds and the other equal to the amount by which such Awarded Funds exceed the principal balance of the Note at the time of receipt of such Awarded Funds. The first such portion shall be applied to the sums secured by this Security Instrument, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower.

**4.6    Cure of Waiver of Default.** Any application of such Awarded Funds or any portion of it to any Indebtedness secured by this Security Instrument shall not be construed to cure or waive any default or notice of default under this Security Instrument or invalidate any act done under any such default or notice.

**5.    Taxes and Other Sums Due.** Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Security Instrument, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Security Instrument or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Security Instrument, whether or not specified in this Security Instrument.

On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 5(a) through (e), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this Section, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower

---

10

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials:

PCI_0040

of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Security Instrument to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

**6.        Leases of Mortgaged Property by Borrower.** At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Security Instrument; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of setoff against Rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against Rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. Any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Loan Agreement, the Note and this Security Instrument; and upon the occurrence of any such violation, Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

**7.        Right to Collect and Receive Rents.** Despite any other provision of this Security Instrument, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default

11

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials:

by Borrower in payment of any Indebtedness secured by this Security Instrument or in the performance of any of the Obligations, and Lender shall have the rights set forth in the laws and regulations where the Mortgaged Property is located regardless of whether declaration of default has been delivered, and without regard to the adequacy of the security for the Indebtedness secured by this Security Instrument. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Security Instrument, after execution and delivery of declaration of default and demand for sale as provided in this Security Instrument or during the pendency of trustee's sale proceedings under this Security Instrument or judicial foreclosure, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorneys' Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Security Instrument, in such order as Lender may decide. Nothing in this Security Instrument, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Security Instrument to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Security Instrument. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Security Instrument shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

8.    **Assignment of Causes of Action, Awards, and Damages.** All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Security Instrument was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment,

12

construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Security Instrument. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorneys' Fees, incurred by Lender in recovering or collecting any sums under this Section, Lender may apply or release the balance of any funds received by it under this Section, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this Section and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

9.     **Defense of Security Instrument; Litigation.**  Borrower represents and warrants that this Security Instrument creates a first position lien and security interest against the Mortgaged Property. Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents. Despite any other provision of this Security Instrument, Borrower agrees that Lender or Trustee may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorneys' Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, nonjudicial proceeding, arbitration, or other alternative dispute resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Security Instrument, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, and that if Lender and Trustee elect not to do so, Borrower shall commence, appear in, prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender and Trustee, including costs of evidence of title and Attorneys' Fees, in any such action or proceeding in which Lender or Trustee may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender or Trustee in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Security Instrument or to enforce any of its terms or provisions.

10.     **Borrower's Failure to Comply With Security Instrument.**  If Borrower fails to make any payment or do any act required by this Security Instrument, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Agreement, the Note or this Security Instrument, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this

13

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials:

PCI_0043

Security Instrument, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorneys' Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

**11.    Sums Advanced to Bear Interest and to Be Secured by Security Instrument.** At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Security Instrument or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender and Trustee shall be added to, and become a part of, the Indebtedness secured by this Security Instrument and bear interest from the date of advancement or payment by Lender or Trustee at the Default Rate provided in the Note, regardless of whether an Event of Default has occurred, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Security Instrument or the other Loan Documents, shall have the same priority to which the Security Instrument otherwise would be entitled as of the date this Security Instrument is executed and recorded, without regard to the fact that any such future advances may occur after this Security Instrument is executed, and shall conclusively be deemed to be mandatory advances required to preserve and protect this Security Instrument and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Security Instrument to the same extent and with the same priority as the principal and interest payable under the Note.

**12.    Inspection of Mortgaged Property.** In addition to any rights Lender may have under the laws and regulations where the Mortgaged Property is located, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

**13.    Uniform Commercial Code Security Agreement.** This Security Instrument is intended to be and shall constitute a security agreement under the Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law. Borrower agrees that Lender may file this Security Instrument, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Security Instrument or executed duplicate original of this Security Instrument, or a copy certified by a County Recorder in the state where the Mortgaged Property is located, or of any other security agreement or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Security Instrument in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may

14

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

v1.8P

Borrower's Initials: _____

reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

On any Event of Default, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in the Non-Uniform Covenants section of this Security Instrument as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in the Non-Uniform Covenants section of this Security Instrument.

14.    **Fixture Filing.** This Security Instrument constitutes a financing statement filed as a fixture filing under the Uniform Commercial Code, as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement. The addresses of Borrower ("Debtor") and Lender ("Secured Party") are set forth on the first page of this Security Instrument.

15.    **Waiver of Statute of Limitations.** Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Security Instrument, to the fullest extent permitted by Governmental Requirements.

16.    **Default.** Any Event of Default, as defined in the Loan Agreement, shall constitute an "Event of Default" as that term is used in this Security Instrument (and the term "Default" shall mean any event which, with any required lapse of time or notice, may constitute an Event of Default, whether or not any such requirement for notice or lapse of time has been satisfied).

17.    **Acceleration on Transfer or Encumbrance.**

    17.1    **Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, gives an option to purchase, exchanges, assigns, conveys, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument) (other than with a Permitted Encumbrance), transfers possession, or alienates all or any portion of the Mortgaged Property, or any of Borrower's interest in the Mortgaged Property, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of any interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents. For purposes of this Section "interest in the Mortgaged Property" means any legal or beneficial interest in the Mortgaged Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

    17.2    **Replacement Personalty.** Notwithstanding anything to the contrary herein, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests,

15

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

v1.84

Borrower's Initials: _____

PCI_0045

ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Security Instrument in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Security Instrument constitutes a valid and subsisting lien on and security interest in such replacement Personalty of the same priority as this Security Instrument has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements.

     **17.3**    **Junior Liens.**  If Lender consents in writing, in Lender's sole and absolute discretion, the due-on-encumbrance prohibition shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Loan Agreement and the Note). Borrower shall reimburse Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance. Should Borrower fail to obtain Lender's express written consent to any junior voluntary lien, then Lender, at Lender's option, may, without prior notice and subject to Applicable Law, declare all sums secured by this Security Instrument, regardless of any their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

**18.**    **Waiver of Marshaling.**  Despite the existence of interests in the Mortgaged Property other than that created by this Security Instrument, and despite any other provision of this Security Instrument, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Security Instrument and to establish the order in which all or any part of the Indebtedness secured by this Security Instrument is satisfied from the proceeds realized on the exercise of the remedies provided in this Security Instrument. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Security Instrument waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Security Instrument or otherwise provided by Governmental Requirements.

**19.**    **Consents and Modifications; Borrower and Lien Not Released.**  Despite Borrower's default in the payment of any Indebtedness secured by this Security Instrument or in the performance of any Obligations under this Security Instrument or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Security Instrument, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan Documents; (d) reduce the amount of the monthly installments due under the Note; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Security Instrument; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action

---

16

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials: _____

taken by Lender under this Section shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Security Instrument and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Security Instrument; or (iii) the lien or priority of the lien of this Security Instrument. At Lender's request, Borrower shall pay Lender a reasonable service charge, together with all insurance premiums and Attorneys' Fees as Lender may have advanced, for any action taken by Lender under this Section.

Whenever Lender's consent or approval is specified as a condition of any provision of this Security Instrument, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

20.     **Future Advances.** On request by Borrower, Lender, at Lender's option, may make future advances to Borrower. All such future advances, with interest, shall be added to and become a part of the Indebtedness secured by this Security Instrument when evidenced by promissory notes reciting that such note(s) are secured by this Security Instrument.

21.     **Prepayment.** If the Loan Documents provide for a fee or charge as consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under the Loan Documents and Lender has declared all sums secured by this Security Instrument immediately due and payable.

22.     **Governing Law; Consent to Jurisdiction and Venue.** This Loan is made by Lender and accepted by Borrower in the State of California except that at all times the provisions for the creation, perfection, priority, enforcement and foreclosure of the liens and security interests created in the Mortgaged Property under the Loan Documents shall be governed by and construed according to the laws of the state in which the Mortgaged Property is situated. To the fullest extent permitted by the law of the state in which the Mortgaged Property is situated, the law of the State of California shall govern the validity and enforceability of all Loan Documents, and the debt or obligations arising hereunder (but the foregoing shall not be construed to limit Lender's rights with respect to such security interest created in the state in which the Mortgaged Property is situated). The parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Mortgaged Property, shall be Fresno County, California, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS:

23.     **Taxation of Security Instrument.** In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Security Instrument, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare

17

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

v184

Borrower's Initials:

2024-044925 Page 19 of 29

all sums secured by this Security Instrument to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Security Instrument.

24.     **Mechanic's Liens.** Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Security Instrument shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanic's, laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

25.     **Liability for Acts or Omissions.** Lender shall not be liable or responsible for its acts or omissions under this Security Instrument, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

26.     **Notices.** Except for any notice required by Governmental Requirements to be given in another manner, any notice required to be provided in this Security Instrument shall be given in accordance with the Loan Agreement.

27.     **Statement of Obligations.** Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Security Instrument.

28.     **Remedies Are Cumulative.** Each remedy in this Security Instrument is separate and distinct and is cumulative to all other rights and remedies provided by this Security Instrument or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

29.     **Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Security Instrument shall be the joint and several obligations of each such Person.

30.     **Delegation of Authority.** Whenever this Security Instrument provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

31.     **Funds for Taxes Insurance, and Impositions.** If Borrower is in default under this Security Instrument or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the Impositions as they become due. The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Impositions under the Loan Documents in such order or priority as Lender shall determine. If at

18

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials:

any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Security Instrument in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this Section shall be deemed to affect any right or remedy of Lender under any other provision of this Security Instrument or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Security Instrument. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this Section is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this Section. Notwithstanding the preceding, Borrower and Lender may agree to impounds of taxes and insurance which impounds shall be identified in the Note.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Security Instrument. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Security Instrument, apply such amounts or any portion of it to any Indebtedness secured by this Security Instrument, and such application shall not be construed to cure or waive any default or notice of default under this Security Instrument.

If Lender requires deposits to be made under this Section, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Security Instrument, Lender shall have the right to transfer all amounts deposited under this Section to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Security Instrument for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

**32.    General Provisions.**

    **32.1    Successors and Assigns.** This Security Instrument is made and entered into for the sole protection and benefit of Lender and Borrower and their successors and assigns, and no other Person or Persons shall have any right of action under this Security Instrument. The terms of this Security Instrument shall inure to the benefit of the successors and assigns of the parties, provided, however, that the Borrower's interest under this Security Instrument cannot be assigned or otherwise transferred without the prior consent of Lender. Lender in its sole discretion may transfer this Security Instrument, and may sell or assign participations or other interests in all or any part of this Security Instrument, all without notice to or the consent of Borrower.

    **32.2    Meaning of Certain Terms.** As used in this Security Instrument and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Security Instrument as a whole, rather than any particular provision of it.

    **32.3    Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Security Instrument, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

    **32.4    Gender and Number.** Wherever the context so requires in this Security Instrument, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

19

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

v184

Borrower's Initials: _____

**32.5  Captions.** Captions and section headings used in this Security Instrument are for convenience of reference only, are not a part of this Security Instrument, and shall not be used in construing it.

**33.  Dispute Resolution; Waiver of Right to Jury Trial.**

   **33.1  ARBITRATION.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

   **33.2  WAIVER OF RIGHT TO JURY TRIAL.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT AND WAIVER OF RIGHT TO JURY TRIAL WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM (AS DEFINED IN THE ARBITRATION AGREEMENT) OR CAUSE OF ACTION BASED ON OR ARISING FROM THE LOAN.

BORROWER'S INITIALS:

   **33.3  PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.** Nothing in the Section above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver), or (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in the Section above. Neither the exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission of the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in the Section above.

**34.  Contractual Right to Appoint a Receiver Upon Default.** Upon an Event of Default under this Security Instrument or a breach of any clause of any agreement signed in connection with the Loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

**35.  Loan Agreement.** This Security Instrument is subject to the provisions of the Loan Agreement. As specifically provided in the Loan Agreement, if Borrower defaults under this Security Instrument, Lender has the right and option to foreclose against any Collateral provided under the Loan Agreement.

**36.  Condominium and Planned Unit Developments.** If any of the Mortgaged Property includes a unit or units in, together with an undivided interest in the common elements of, a condominium project (the "Condominium Project") or a Planned Unit Development ("PUD"), the following additional requirements shall be in place.

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

v184

Borrower's Initials:

PCI_0050

**36.1    Additional Security.**  If the owners association or other entity which acts for the Condominium Project and/or PUD (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Mortgaged Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**36.2    Obligations.**  Borrower shall perform all of Borrower's obligations under the Condominium Project's and/or PUD Constituent Documents. The "Constituent Documents" are the: (1) condominium declaration and/or any other document which creates the Condominium Project and or PUD; (2) any by-laws; (3) any code or regulations; (4) articles of incorporation, trust instrument or any equivalent document which create the Owners Association; and (5) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**36.3    Owners Association Policy Proceeds.**  If the Owners Association maintains a "master" or "blanket" policy on the Condominium Project or PUD and an event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Mortgaged Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Mortgage, whether or not then due, with any excess paid to Borrower.

**36.4    Owners Association Liability Coverage.**  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**36.5    Consent of Lender.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Mortgaged Property or consent to:

36.5.1.  the abandonment and/or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of taking by condemnation or eminent domain;

36.5.2.  any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

36.5.3.  termination of professional management and assumption of self-management of the Owners Association; or

36.5.4.  any action which would have the effect of rendering the any insurance coverage maintained by the Owners Association unacceptable to Lender.

## NON-UNIFORM COVENANTS.

Notwithstanding anything to the contrary elsewhere in this Security Instrument, Borrower and Lender further covenant and agree as follows:

**37.    Acceleration and Sale on Default.**  If an Event of Default occurs, Lender, at its option, in addition to other remedies provided at law, may declare all sums secured by this Security Instrument immediately due and payable by delivering to Trustee a written affidavit or declaration of default and demand for sale, executed by Lender and reciting facts demonstrating such default by Borrower, together with a written notice of default and election to sell the Mortgaged Property. Lender shall also deposit with Trustee the Note, this Security Instrument, and documents evidencing any additional advances or expenditures secured by this Security Instrument. On receipt by Trustee of such affidavit or declaration of default and such notice of default and election to sell, Trustee shall accept such election to sell as true and conclusive of all facts

21

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials:

and statements in such affidavit or declaration of default and shall cause such notice of default and election to sell to be recorded as required by Governmental Requirements. On the expiration of such period as may then be required by Governmental Requirements following recordation of such notice of default, and after notice of sale has been given in the manner and for the period required by Governmental Requirement, Trustee, without demand on Borrower, shall sell the Mortgaged Property at the time and place fixed in such notice of sale, either in whole or in separate parcels, and in such order as Trustee may determine or Lender may direct (Borrower waives any right it may have under Governmental Requirements to direct the order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale; provided, however, that Lender may offset its bid at such sale to the extent of the full amount owed to Lender under the Loan Documents, including, without limitation, Trustee's fees, expenses of sale, and costs, expenses, and Attorneys' Fees incurred by or on behalf of Lender in connection with collecting, litigating, or otherwise enforcing any right under the Loan Documents. Trustee shall deliver to the purchaser at such public auction its deed conveying the Mortgaged Property sold, but without any covenant or warranty, express or implied. The recital in such deed of any matter of fact concerning notices shall be conclusive proof of its truthfulness. Any person, including Borrower, Trustee, or Lender, may purchase at such sale.

The proceeds or avails of any sale made under or by virtue of this Security Instrument, together with any other sums secured by this Security Instrument, which then may be held by the Trustee or Lender or any other person, shall be applied as follows: (1) To the payment of the costs and expenses of such sale, including Trustee's fees, costs of title evidence, Attorneys' Fees, and reasonable compensation to Lender and its agents and consultants, and of any judicial proceedings in which the same costs and expenses of sale may be made, and of all expenses, liabilities, and advances made or incurred by the Trustee or Lender under this Security Instrument, together with interest at the rate set forth in the Note on all advances made by the Trustee or Lender and all taxes or assessments, except any taxes, assessments, or other charges subject to which the Mortgaged Property was sold; (2) to the payment of the whole amount then due, owing, or unpaid on the Note for interest and principal, with interest on the unpaid principal at the Default Rate (as defined in the Note), from the due date of any such payment of principal until the same is paid; (3) to the payment of any other Indebtedness required to be paid by Borrower under any provision of this Security Instrument, the Note, or any of the other Loan Documents; and (4) to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive it.

38.    **Trustee.** The Trustee shall be deemed to have accepted the terms of this trust when this Security Instrument, duly executed and acknowledged, is made a public record as provided by law. The Trustee shall not be obligated to notify any party to this Security Instrument of any pending sale under any other Security Instrument or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Security Instrument, Lender's security for the payment of the Indebtedness and the performance of the Obligations, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

39.    **Power of Trustee to Reconvey or Consent.** At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Security Instrument to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Security Instrument, or (b) the lien of this Security

22

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials: 

Instrument on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Security Instrument, (c) or any right or power of Lender or Trustee with respect to the remainder of the Mortgaged Property, Trustee may (i) reconvey or release any part of the Mortgaged Property from the lien of this Security Instrument; (ii) approve the preparation or filing of any map or plat of the Mortgaged Property; (iii) join in the granting of any easement burdening the Mortgaged Property; or (iv) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Security Instrument.

40.    **Duty to Reconvey.** On Lender's written request reciting that all sums secured hereby have been paid, surrender of the Note and this Security Instrument to Trustee for cancellation and retention by Trustee, and payment by Borrower of any reconveyance fees customarily charged by Trustee, Trustee shall reconvey, without warranty, the Mortgaged Property then held by Trustee under this Security Instrument. The recitals in such reconveyance of any matters of fact shall be conclusive proof of their truthfulness. The grantee in such reconveyance may be described as "the person or persons legally entitled to the Mortgaged Property." Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Security Instrument.

41.    **Substitution of Trustee.** Lender, at Lender's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Security Instrument, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in which the Mortgaged Property is located, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Security Instrument, the book and page or instrument or document number at which, and the county or counties in which, this Security Instrument is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Security Instrument, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this Section for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

42.    **Assignment of Rents.** This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under California Civil Code §2938.

43.    **Waiver of Right of Offset.** No portion of the Indebtedness secured by this Security Instrument shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. Borrower hereby waives, to the fullest extent permitted by Governmental Requirements, the benefits of California Code of Civil Procedure section 431.70, which provides:

> Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this Section shall

23

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials: 184

not exceed the value of the relief granted to the other party. The defense provided by this Section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this Section by the assignment or death of the other. For the purposes of this Section, a money judgment is a "demand for money" and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9.

44.    **California Business & Professions Code § 10238 Notice.**  If there are multiple beneficiaries to this Security Instrument, the provisions of California Business & Professions Code Section 10238(i) and California Civil Code Section 2941.9 may control the actions to be taken by the beneficiaries. Section 10238(i) provides "[t]he holders of more than 50 percent of the recorded beneficial interests of the notes or interests may govern the actions to be taken on behalf of all holders in accordance with Section 2941.9 of the Civil Code in the event of default or foreclosure for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance, or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure."

**[SIGNATURES FOLLOW]**

---
24

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials: ___

IN WITNESS WHEREOF, Borrower has executed and delivered this Security Instrument as of the date first written above.

BORROWER:

3515 HWY 99 LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By: _____
      Manpreet Randhawa, Sole Member

---

25

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

v1.84

Borrower's Initials: _____

PCI_0055

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA )

County of SAN JOAQUIN )

On MAY 23, 2024 before me, Amy M. Pickart , Notary Public
___Date___                          ___Here Insert Name of the Officer___

Personally Appeared MANPREET RANDHAWA
                          ___Name(s) of Signer(s)___

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.



AMY M. PICKART
COMM. #2403343
NOTARY PUBLIC – CALIFORNIA
SAN JOAQUIN COUNTY
MY COMM. EXP. MAY 30, 2026

I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                ___Signature of Notary Public___

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials: _____

PCI_0056

**EXHIBIT "A"**
**LEGAL PROPERTY DESCRIPTION**

See attached

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan No. RR-004

Borrower's Initials: ___

PCI_0057

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

The land described herein is situated in the State of California, County of San Joaquin, unincorporated area, described as follows:

The South 10 acres of Lot 1, as shown upon Map entitled, "McCleary's Subdivision", filed for record January 12, 1906, in Vol. 3 of Maps and Plats, at Page 41, San Joaquin County Records.

EXCEPT THEREFROM the West 6-1/2 acres (the East line of said 6-1/2 acres being measured by line drawn parallel to the West line of said Lot).

ALSO EXCEPT THEREFROM that portion of said land described in Deed to the State of California, recorded April 17, 1931, in Book of Official Records, Vol. 368, Page 372, San Joaquin County Records.

ALSO EXCEPT THEREFROM that portion of said land described in Deed to the State of California, recorded September 23, 1954, in Book 1671 of Official Records, Page 6, San Joaquin County Records.

ALSO EXCEPT THEREFROM that portion of said land described in Deed to the State of California, recorded August 24, 2011, as Document No. 2011-102257, San Joaquin County Records.

APN: 179-090-04

# Exhibit F

Doc #:  2024-044926
Page 1 of 5  Fee: $34.00
Steve J. Bestolarides
San Joaquin County Recorder
Paid By:

**RECORDING REQUESTED BY:**

eRecording Partners Network (ePN)
Placer Title Company
Branch Number: 2110

**WHEN RECORDED MAIL TO:**
Levon Zekian and Sam Behpoor
c/o 8050 N. Palm Ste 100
Fresno, CA 93711

Order No: P-621736

## Assignment of Deed of Trust
(Please fill in document title(s) on this line)

☐  Exempt from fee per GC27388.1(a)(2) due to being recorded in connection with concurrent transfer that is subject to the imposition of documentary transfer tax, or,

☒  Exempt from fee per GC27388.1(a)(1) due to the maximum fees being paid on documents in this transaction, or,

☐  Partially exempt from fee per GC27388.1(a)(1). Only $75.00 to be charged as $150.00 in fees has been paid on documents recorded immediately prior hereto or,

☐  Exempt from fee per GC27388.1(a)(2) due to being recorded in connection with concurrent transfer that is a residential dwelling to an owner-occupier, or,

☐  Exempt from the fee per GC27388.1(a) (1); Not related to real property, or,

☐  Exempt from fee under GC27388.1(a)(1) for the following reasons:

NOTE: The following exemptions may not be acceptable for use in all counties:

☐  Exempt from fee per GC27388.1 due to being recorded in connection with a transfer that was subject to documentary transfer tax which was paid on document recorded previously on  (date) as document number  of Official Records, or,

☐  Exempt from fee per GC27388.a due to the maximum fees having been paid on documents in the transaction(s) recorded previously on  (date) as document number(s)  of Official Records, or,

☐  Partially exempt from fee per GC27388.1. Only $75.00 to be charged as $150.00 in fees having been paid on documents in this transaction(s) recorded previously on  (date) as document number(s) of Official Records, or,

☐  Exempt from fee per GC27388.1 due to it being recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier. The recorded document transferring the dwelling to the owner-occupier was recorded on  (date) as document number(s) .

THIS PAGE ADDED TO PROVIDE SENATE BILL 2 EXEMPTION INFORMATION
(Additional recording fee applies)

PCI_0059

**WHEN RECORDED, RETURN TO:**

Z Blinds Company, Inc., as to an undivided 41.667%
interest, SA9 Properties, LLC, as to an undivided 25.000%
interest, Levon Zekian, as to an undivided 16.667% interest,
Sam Behpoor, as to an undivided 16.667% interest
8050 North Palm Avenue, Suite 100
Fresno, CA 93711

Loan No. RR-004
Property ID No.: 179-090-040-000

## ASSIGNMENT OF DEED OF TRUST

For value received, the undersigned, PACT Capital Inc., having an address at 8050 North Palm Avenue, Suite 100, Fresno, California 93711 ("Assignor"), hereby grants, assigns and transfers to Z Blinds Company, Inc., as to an undivided 41.667% interest, SA9 Properties, LLC, as to an undivided 25.000% interest, Levon Zekian, as to an undivided 16.667% interest, Sam Behpoor, as to an undivided 16.667% interest, having an address of 8050 North Palm Avenue, Suite 100, Fresno, CA 93711 ("Assignee"), all of the undersigned's rights, title and interest due or to become due in and to that certain Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement, together with that certain Secured Note in the amount of $1,200,000.00, each dated May 17, 2024, executed by 3515 HWY 99 LLC, a California limited liability company ("Borrower"), in favor of PACT Capital Inc., which was recorded concurrently herewith in the Recorder's Office of the County of San Joaquin, State of California (the "Deed of Trust"), against:

The real property located in the City of Stockton, County of San Joaquin, State of California, described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF,

commonly known as 3515 South St Rt 99 West Frontage Road, Stockton, California 95215 (the "Mortgaged Property");

Together with all of Assignor's rights, title and interest in and to the Secured Note therein described or referred to, the money due and to become due with interest, and all rights to accrue under said Deed of Trust, and all Loan Documents (as defined in the Loan Agreement) executed concurrently therewith.

The undersigned Assignor has independently and contemporaneously executed that certain Allonge to Secured Note assigning and transferring to Assignee, all of the Assignor's right, title and interest in and to the Secured Note which is secured by the Deed of Trust.

**[SIGNATURES FOLLOW]**

© 2007 Geraci Law Firm; All Rights Reserved.
Assignment of Deed of Trust | Loan No. RR-004

v184

**PCI_0060**

Dated: _5-25-14_

**ASSIGNOR:**

**PACT CAPITAL INC.**

By:
Name: _Tyler Shegerian_        Tyler Shegerian
Title: _CFO & Secretary_        CFO & Secretary

© 2007 Geraci Law Firm; All Rights Reserved.
Assignment of Deed of Trust | Loan No. RR-004

v184

PCI_0061

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of             )

County of FRESND         )

On **5/24/2024** before me, **DARRYL EVANS** , Notary Public
    *Date*                         *Here Insert Name of the Officer*

Personally Appeared **TYLER SHEGERIAN**
                              *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of **CALIFORNIA** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                  *Signature of Notary Public*

DARRYL EVANS
Notary Public - California
Fresno County
Commission # 2328814
My Comm. Expires Jun 16, 2024

3

© 2007 Geraci Law Firm; All Rights Reserved.
Assignment of Deed of Trust | Loan No. RR-004

v184

PCI_0062

## EXHIBIT "A"
### LEGAL DESCRIPTION

The land described herein is situated in the State of California, County of San Joaquin, unincorporated area, described as follows:

The South 10 acres of Lot 1, as shown upon Map entitled, "McCleary's Subdivision", filed for record January 12, 1906, in Vol. 3 of Maps and Plats, at Page 41, San Joaquin County Records.

EXCEPT THEREFROM the West 6-1/2 acres (the East line of said 6-1/2 acres being measured by line drawn parallel to the West line of said Lot).

ALSO EXCEPT THEREFROM that portion of said land described in Deed to the State of California, recorded April 17, 1931, in Book of Official Records, Vol. 368, Page 372, San Joaquin County Records.

ALSO EXCEPT THEREFROM that portion of said land described in Deed to the State of California, recorded September 23, 1954, in Book 1671 of Official Records, Page 6, San Joaquin County Records.

ALSO EXCEPT THEREFROM that portion of said land described in Deed to the State of California, recorded August 24, 2011, as Document No. 2011-102257, San Joaquin County Records.

APN: 179-090-04

# Exhibit G

TS No.: 250617505                      Loan No.: **RR-004**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**Z Blinds Company, Inc., SA9 Properties, LLC, Levon Zekian, Sam Behpoor**
**c/o Fortra Law (f/k/a Geraci LLP)**
**20 Pacifica, Suite 300**
**Irvine, CA 92618**
**Phone: (949) 954-6092**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Fortra Law (f/k/a Geraci LLP)** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **5/17/2024**, executed by **3515 HWY 99 LLC, a California limited liability company**, as Trustor, to secure certain obligations in favor of **PACT Capital Inc**, as beneficiary, recorded **5/31/2024**, as Instrument No. **2024-044925**, in Book , Page , of Official Records in the Office of the Recorder of **San Joaquin** County, California describing land therein as: As more fully described on said Deed of Trust.

Including one **NOTE(S) FOR THE ORIGINAL** sum of **$1,200,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The balance of principal and interest which became due on 6/1/2025, along with late charges, foreclosure fees and costs any legal fees or advances that have become due, plus any other obligations, including taxes, insurance payments, and any payments due senior liens or leaseholds which obligations are secured by the deed of trust which is in default plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**A declaration from the mortgagee, beneficiary, or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office**

**Dated: 6/20/2025**          **Fortra Law (f/k/a Geraci LLP) by Total Lender Solutions, Inc., its authorized agent**

BY: _Rachel S_____

**Rachel Seropian, Trustee Sales Officer**

**The above named trustee may be acting as a debt collector attempting to collect a debt. Any information obtained may be used for that purpose.**

**To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**

# Declaration of Mortgage Servicer Pursuant to Civil Code §2923.5(b)

Borrower(s):          3515 HWY 99 LLC, a California limited liability company
Mortgage Servicer:    PACT Capital Inc

Property Address:     3515 South St Rt 99 West Frontage Road
                      Stockton, CA 95215

T.S. No.:             250617505

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. [  ]  The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.5(a)(2) "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. [  ]  Despite the exercise of due diligence pursuant to California Civil Code § 2923.5(e), the mortgage servicer has been unable to contact the borrower "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. [  ]  No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

4. [ X ]  The requirements of Cal. Civil Code § 2923.5 do not apply because the borrower, mortgage/deed of trust or real property does not meet the criteria described in Civil Code § 2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence, which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

PACT Capital Inc., Mortgage Servicer

Dated: June 18, 2025

By: Tyler Shegerian
Title: Managing Director



Summary of Notice of Default

NOTICE OF DEFAULT
SUMMARY OF KEY INFORMATION

The attached notice of default was sent to 3515 HYW 99 LLC, a California limited liability company, in relation to 3515 South St Rt 99 West Frontage Road, Stockton, CA 95215.

This property may be sold to satisfy your obligation and any other obligation secured by the deed of trust or mortgage that is in default.  3515 HYW 99 LLC, a California limited liability company has, as described in the notice of default, breached the mortgage or deed of trust on the property described above.

IMPORTANT NOTICE:  IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date the attached notice of default may be recorded (which date of recordation appears on the notice).

This amount is $1,255,577.50 as of 6/2/2025 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
Fortra Law (f/k/a Geraci LLP)
20 Pacifica, Suite 300
Irvine, CA 92618
(949) 954-6092

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.



If you would like additional copies of this summary, you may obtain them by calling (949) 954-6092.

違約通知

關鍵信息摘要

本文中包含有關3515 South St Rt 99 West Frontage Road, Stockton, CA 95215 的違約通知發送給3515 HYW 99 LLC, a California limited liability company。

該房產可能被出售，以履行你的產權契約，抵押貸款及所應承擔的任何其它義務。

3515 HYW 99 LLC, a California limited liability company
如違約通知中所描述，違反了上述房產的抵押貸款或產權契約。

重要注意事項：如果你的房產因為你逾期未付款而進入法拍程序，可能不經任何法庭行動而被出售。你可能有權利在法律允許的恢復賬戶時間內，支付你所有的逾期款項，加上應付的成本和費用，使你的帳戶保持良好信譽。時間通常是確定你財產出售日期的五個工作日之前。法拍日期要到本文中包含的違約通知被記錄在案（記錄日期出現在通知上）之後的90天，才可能確定。

這一金額在$1,255,577.50 時為6/2/2025，並會增加，直到你的帳戶回歸正常。

當你的房產進入法拍程序，你仍須支付應付票據和產權契約或抵押貸款的其它付款義務（如保險費和稅金）。如果你沒有支付接下來的貸款，房地產稅，或財產保險及其它應付票據和產權契約或抵押貸款所要求的付款義務，受益人或抵押權人可以堅持要求你履行這些義務，以恢復你的帳戶信譽。此外，受益人或抵押權人可以以恢復你的帳戶為條件，要求你提供已經付清需優先處理的放置在你產權上的債務，房地產稅及財產保險保費的可靠書面証據。

一旦你書面申請，受益人或抵押權人會提供給你分類支付的全部帳單金額。雖然要求全額付款，你可以不用支付賬戶中的全部未付款，但你必須支付所有已逾期的款項。但是，你和你的受益人或抵押權人在發布法拍書面通知前（本通知被記錄在案的3個月后），可以以書面形式相互同意，其中包括（1）提供更多的時間來轉讓房產及以其它方式糾正違約，或（2）建立付款時間表以糾正違約，或兩者兼而有之。

當本通知第一段中提到的時間段到期，如果法拍未進行，或者你和你的債權人之間有單獨的書面協議允許更長的時間，你只有在支付你債權人所要求的全部金額後，才有權利停止債權人出售你的房產。

如果要了解你必須支付的款項或安排支付以停止法拍，或者要了解你的房產進入法拍程序的其他原因，請聯系：

**Fortra Law (f/k/a Geraci LLP)**
**20 Pacifica, Suite 300**
**Irvine, CA 92618**
**(949) 954-6092**

如果你有任何疑問，應咨詢律師及可能為你的貸款提供擔保的政府機構。

盡管事實上你的房產已進入法拍程序，你可以上市出售你的房產。變要出售程序在法拍程序結束之前完成即可。

請記住，如果你不迅速採取行動，你可能失去法律權利。

如果你想獲得更多的本摘要副本，請撥打下列電話(949) 954-6092。



채무 불이행 통지서
주요 정보 요약

첨부된 채무 불이행 통지서는3515 HYW 99 LLC, a California limited liability company 에게 발송되는 것이며, 이는3515 South St Rt 99 West Frontage Road, Stockton, CA 95215 에 관한것입니다.

이 부동산은 귀하의 채무 및 신탁 증서나 저당권에 의해 보증된 기타 채무를 이행하기

위해 매각될 수 있습니다.채무 불이행 통지서에서 설명된 바와 같이, 3515 HYW 99 LLC, a California limited liability company 는(은)상기 설명된 부동산의 저당권 또는 신탁 증서를 위반했습니다.

중요 통보: 귀하의 부동산이 체납으로 인해 차압이 진행 중인 경우, 그 부동산은 법원의 판결 없이 매각될 수 있으며, 귀하에게는 모든 미불금과 허용 가능 원가 및 법이 허용하는 시간 내에 계정 복구를 위한 비용을 지불함으로써 귀하의 계정을 완불 상태로 만들 수 있는 법적 권리가 있으며, 이 허용 시간은 보통 영업일로 부동산의 매각 예정일로부터 5일 전입니다. 부동산 매각 날짜는 채무 불이행 통지가 기록되는 날짜(통지서에 기재되어 있음)로부터 약 90일 이내로 정해질 수 없습니다.

이 금액은$1,255,577.50 현재6/2/2025 이며, 귀하의 계정이 기한 내

지불 상태가 될 때까지 증가할 것입니다.

귀하의 부동산 차압이 진행되는 동안에도 귀하는 신탁 어음 및 증서 또는 저당권에 의해 요구되는 기타 채무(보험, 세금 등)를 지불해야 합니다. 장래 대부금 지불, 부동산에 대한 세금 납부, 부동산에 대한 보험 유지, 또는 신탁 어음 및 증서 또는 저당권에 의해 요구되는 기타 채무에 대한 지불을 불이행하는 경우, 신탁수익자나 저당권자는 상기 사항이 이행되지 않으면 귀하의 계정이 완불 상태로 복구될 수 없다고 주장할 수 있습니다. 또한 신탁수익자나 저당권자는 복구의 조건으로 귀하에게 모든 선순위 담보권, 재산세 및 재해 보험료를 지불했다는 확실한 서면 증거를 제공할 것을 요구할 수 있습니다.

서면 요청시, 신탁수익자나 저당권자는 지불되어야 할 전체 금액에 대한 조목별 기재 문서를 제공할 것입니다. 완불을 요구한다 하더라도 귀하는 귀하 계정의 전체 미납 부분을 모두 지불할 필요는 없지만, 지불하는 당시 모든 채무 불이행 금액이 지불되어야 합니다. 그러나, 귀하와 귀하의 신탁수익자 또는 저당권자는 매각 통보의 게시 시점 이전에(이 채무 불이행 통지서가 기록된 후 3개월이 지나기 이전에는 가능하지 않음), (1) 부동산의 양도 또는 다른 방법으로 채무 불이행을 해결할 수 있는 추가적인 시간 제공, 또는 (2) 채무 불이행을 해결하기 위한 지급 일정의 확립, 또는 (1)과 (2)를 함께 수행하는 서면 사전 합의와 같은 해결 방법들이 있습니다.

본 통지서의 첫번째 단락에 나타난 만기일 이후, 차압이 진행되는 채무 또는 귀하와 귀하의 채권자에 의한 별도의 서면 합의에 의해 추가적인 시간이 허용되지 않는 한, 채권자가 요구하는 전체 금액을 지불하는 것이 귀하의 부동산 매각을 저지할 수 있는 유일한 법적 권리입니다.

귀하가 지불해야 할 금액을 알아보시려면, 차압을 중단하기 위한 지불 방법에 대해 합의하시려면 또는 다른 어떤 이유로 인해 귀하의 부동산에 대한 차압이 진행되는 경우, 다음으로 연락하십시오:

Fortra Law (f/k/a Geraci LLP)
20 Pacifica, Suite 300
Irvine, CA 92618
(949) 954-6092

질문이 있으신 경우, 변호사 또는 귀하의 대부금을 보증한 정부 기관에 연락하십시오.

귀하의 부동산에 대한 차압이 진행됨에도 불구하고 귀하는 부동산을 매각 처분할 수 있으며, 이때 부동산의 매각은 차압이 완료되기 전에 완료되어야 합니다.

신속히 행동하지 않으시는 경우, 법적 권리를 잃을 수 있는 사실을 명심하시기 바랍니다.

본 요약서의 추가적인 사본을 원하시는 경우, (949) 954-6092 (으)로
전화하시면 보내드립니다.

AVISO DE INCUMPLIMIENTO
RESUMEN DE LA INFORMACIÓN CLAVE

El aviso de incumplimiento adjunto se envió a 3515 HYW 99 LLC, a California limited liability company, en relación con 3515 South St Rt 99 West Frontage Road, Stockton, CA 95215.

Es posible que esta propiedad sea subastada para cancelar su deuda y cualquier otra obligación garantizada por la escritura de fideicomiso o hipoteca en mora. Tal como se describe en el aviso de incumplimiento, 3515 HYW 99 LLC, a California limited liability company ha incumplido los términos de la hipoteca o escritura de fideicomiso relacionadas con la propiedad antes mencionado.

ADVERTENCIA DE IMPORTANCIA: SI LA PROPIEDAD VA A SER EJECUTADO POR UN ATRASO EN LOS PAGOS, PUEDE VENDERSE SIN NECESIDAD DE ENTABLAR NINGUNA ACCIÓN ANTE LA CORTE, pero usted tiene el derecho jurídico de regularizar su cuenta mediante el pago de todos los importes atrasados, más los costos y gastos permitidos, dentro del plazo permitido por ley para la regularización de la deuda, que es, por lo general, de cinco días hábiles antes de la fecha fijada para la subasta la propiedad. No se puede fijar una fecha para la subasta hasta aproximadamente 90 días después de la fecha en que se registre el aviso de incumplimiento adjunto (fecha que figura en el aviso).

El importe adeudado es de $1,255,577.50 al día 6/2/2025 y aumentará hasta que se ponga al corriente en los pagos.

Mientras se mantenga vigente el procedimiento de ejecución de su propiedad, usted debe pagar otras obligaciones (tales como seguro e impuestos) exigidas en su vale y escritura de fideicomiso o hipoteca. Si no realiza los próximos pagos del préstamo, los impuestos de la propiedad, el seguro de la propiedad u otras obligaciones requeridas por el vale y la escritura de fideicomiso o hipoteca, el beneficiario o acreedor hipotecario pueden insistir en que los pague como condición para regularizar su cuenta. Asimismo, el beneficiario o acreedor hipotecario pueden exigirle, como condición para la regularización, que presente un comprobante confiable por escrito de que ha pagado todos los gravámenes principales, impuestos inmobiliarios y primas del seguro contra riesgos.

Si usted lo solicita por escrito, el beneficiario o acreedor hipotecario le entregarán un resumen por escrito del importe total que debe pagar. Es posible que usted no tenga que pagar la totalidad del monto adeudado de su cuenta, aunque la intimación haya incluido la totalidad de dicho monto, pero sí deberá pagar todos los importes vencidos a la fecha de la realización del pago. Sin embargo, antes de la fecha de publicación del aviso de venta (que no podrá ser menos de tres meses antes de la fecha de registro de este aviso de incumplimiento), usted y su beneficiario o acreedor hipotecario podrán acordar mutuamente por escrito, entre otras cosas: (1) un plazo adicional para subsanar el incumplimiento mediante una transferencia del bien o de otro modo; (2) un programa de pagos para subsanar el incumplimiento; o ambos.

Una vez vencido el plazo mencionado en el primer párrafo del presente aviso, salvo que la obligación que se ejecuta o un acuerdo por escrito separado entre usted y su acreedor permitan un plazo mayor, usted solo tendrá el derecho jurídico de detener la subasta de la propiedad mediante el pago de todo el importe adeudado cuyo pago haya exigido el acreedor.

Para averiguar el importe que debe pagar o coordinar un programa de pagos para suspender la ejecución, o si su propiedad va a ser ejecutada por cualquier otro motivo, comuníquese con:
Fortra Law (f/k/a Geraci LLP)
20 Pacifica, Suite 300
Irvine, CA 92618
(949) 954-6092

Si tiene alguna duda, debe consultar a un abogado o a la agencia de gobierno que asegura su préstamo.

Aun cuando ya se haya iniciado el procedimiento de ejecución, usted puede vender su propiedad, siempre que la venta se realice antes de la finalización del procedimiento de ejecución.

Recuerde que SI NO TOMA MEDIDAS DE INMEDIATO, ES POSIBLE QUE PIERDA SUS DERECHOS JURÍDICOS.

Si desea recibir copias adicionales de este resumen, puede llamar al teléfono (949) 954-6092.



PABATID NG HINDI PAGKAKABAYAD
BUOD NG PANGUNAHING IMPORMASYON

Ang nakakalip na notice of default (pabatid ng hindi pagkakabayad) ay ipinadala kay 3515 HYW 99 LLC, a California limited liability company, sa may kaugnayan sa 3515 South St Rt 99 West Frontage Road, Stockton, CA 95215.

Ang ari-arian na ito ay maaaring ibenta para masiyahan ang inyong obligasyon at alinmang iba pang obligasyong natibay ng deed of trust (papeles ng panagot sa utang) o isinangla na hindi nabayaran. 3515 HYW 99 LLC, a California limited liability company ay, tulad nang inilarawan sa notice of default (pabatid ng hindi pagkakabayad), hindi natupad na isinangla o deed of trust (papeles ng panagot sa utang) sa ari-arian na inilarawan sa itaas.

MAHALAGANG PAUNAWA:  KUNG  ANG INYONG ARI-ARIAN AY MAREREMATA SANHI NG INYONG PAGKUKULANG SA MGA KABAYARAN, MAAARI ITONG IBENTA NANG WALANG ANUMANG PAGKILOS MULA KORTE, at maaaring kayo ay may legal na karapatan na muling maisaayos para maturing na mainam na katayuan ang inyong account sa pamamagitan ng pagbabayad sa lahat ng inyong nakalipas na bayarin at ang mga pinahihntulutan na gastusin at singil sa loob ng panahon na pinahihintulutan ng batas para sa muling pagtatalaga ng inyong account, na karaniwang limang araw ng trabaho bago ang petsang itinakda para sa pagbebenta ng inyong ari-arian. Ang petsa ng pagbebenta ay hindi maaaring itakda hanggang makalipas ang 90 na araw mula sa petsa na ang pabatid ng hindi pagkakabayad ay maaaring maitala (aling petsa ng muling pagtatala na ipinapakita sa pabatid).

Ang halagang ito ay $1,255,577.50 base sa petsang 6/2/2025 at tataas hanggang ang inyong account ay masapanahon.

Habang ang inyong ari-arian ay inireremata, maaari ninyo pa rin bayaran ang iba pang mga obligasyon (tulad ng insurance at mga buwis) na hinihiling ang inyong tala at deed of trust (papeles ng panagot sa utang) o isinangla. Kung kayo ay hindi makapagbayad sa utang, magbayad sa mga buwis sa ari-arian, kumuha ng insurance sa ari-arian, o bayaran ang iba pang mga obligasyon tulad nang hinihiling sa tala o deed of trust (papeles ng panagot sa utang) o isinangla, maaaring pilitin ng benepisyaryo o nag-sangla (nagkaloob ng isinangla) na gawin ninyo ito upang muling maitalaga ang inyong account patungo sa mainam na katayuan. Bilang karagdagan dito,  maaaring hilingin bilang kondisyon ng benepisyaryo o nag-sangla para sa muling pagtatalaga, na kayo ay magbigay ng mapagkakatiwalaang nakasulat na katibayan na inyong nabayaran ang mga lumang garantiya, buwis sa ari-arian, at mga hulog sa seguro para sa pinsala.

Sa inyong naibigay na nakasulat na kahilingan, ang benepisyaryo o nag-sangla ay magbibigay sa inyo ng nakasulat na detalyadong listahan ng kabuuang halaga na dapat ninyong bayaran.  Maaaring hindi ninyo kailangang bayaran ang kabuuan ng inyong hindi pa bayad na bahagi ng inyong account, kahit na hinihiling ang buong kabayaran, pero kailangan muna ninyong bayaran ang lahat ng mga halaga na nagkukulang ayon sa kasunduan sa panahon na naisagawa ang pagbabayad.  Gayunman, kayo at ang inyong benepisyaryo o nag-sangla ay maaaring magkasundo sa pamamagitan ng kasulatan bago ilagay ang abiso ng pagbebenta (na hindi maaaring mas maaga sa tatlong buwan makalipas na matala itong notice of default o abiso ng hindi pagkakabayad) sa, bukod sa iba pang mga bagay, (1) magbigay ng dagdag na panahon kung saan ang kalutasan sa hindi pagtutupad sa napagkasunduan sa pamamagitan ng paglilipat ng ari-arian o sa iba pang paraan; o (2) magtatag ng tipanan ng mga pagbabayad upang malutas ang inyong pagkukulang; o parehong (1) at (2).

Kasunod ng paglipas ng itinakdang panahon na tinutukoy sa unang talaga ng pabatid na ito, maliban kung ang obligasyon sa pagkakaremata o sa hiwalay na nakasulat na kasunduan sa pagitan ninyo at ng inyong creditor ay nagpapahintulot sa isang mas pinatagal na panahon, mayroon lamang kayong legal na karapatan na ihinto ang pagbebenta ng inyong legal na ari-arian sa pamamagitan ng pagbabayad ng buong halagang hinihingi ng inyong creditor.

Upang malaman ang halagang kailangan ninyong bayaran, o para isaayos ang mga pagbabayad para maihinto ang pagkakaremata, o kung ang inyong ari-arian ay maremata sa iba pang kadahilanan, makipag-ugnayan sa:

Fortra Law (f/k/a Geraci
LLP)
20 Pacifica, Suite 300
Irvine, CA 92618
(949) 954-6092

Kung kayo ay mayroong kahit na anong katanungan, kailangan ninyong makipag-ugnayan sa isang abogado o ahensya ng pamahalaan na maaaring nagkaloob ng insurance sa inyong utang.

Sa kabila ng katotohanan na ang inyong ari-arian ay nireremata, maaari ninyong ihandog na ipagbenta ang inyong ari-arian, sa kundisyon na ang pagbebenta ay natapos bago ang pagtatapos ng pagkakaremata.

Tandaan, MAAARING MAWALA SA INYO ANG MGA LEGAL NA KARAPATAN KUNG HINDI KAYO KUMILOS KAAGAD.

Kung nais ninyo ng karagdagang mga kopya ng buod na ito, maaari ninyong makuha ang mga ito sa pamamagitan ng pagtawag sa (949) 954-6092.



THÔNG BÁO VỀ VIỆC QUÁ HẠN TRẢ NỢ
BẢN TÓM LƯỢC CÁC THÔNG TIN CHÍNH

Thông báo quá hạn trả nợ kèm theo đây được gửi cho có quan hệ với 3515 HYW 99 LLC, a California limited liability company,

3515 South St Rt 99 West Frontage Road, Stockton, CA 95215. Căn nhà này có thể được bán để hoàn trả số tiền nợ của quý vị và bất kỳ khoản nợ nào khác theo khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà đã quá hạn trả. Như trình bày

trong thông báo quá hạn trả nợ, 3515 HYW 99 LLC, a California limited liability company đã vi phạm hợp đồng vay thế chấp mua nhà hoặc khế ước ủy thác đối với căn nhà ghi trên.

THÔNG BÁO QUAN TRỌNG: NẾU CĂN NHÀ CỦA QUÝ VỊ BỊ TỊCH THU THẾ NỢ VÌ QUÝ VỊ KHÔNG TRẢ TIỀN ĐÚNG HẠN, CĂN NHÀ ĐÓ CÓ THỂ ĐƯỢC BÁN MÀ KHÔNG CẦN KIỆN RA TÒA, và theo luật quý vị có quyền trả nợ đầy đủ cho trương mục của mình bằng cách trả toàn bộ số tiền đã quá hạn trả cộng với các khoản chi phí và phí tổn được phép trong thời gian luật pháp cho phép để khôi phục lại tài khoản của quý vị, thường là năm ngày làm việc trước ngày dự định bán căn nhà của quý vị. Không được thu xếp ngày bán nhà cho tới khoảng 90 ngày kể từ ngày thông báo quá hạn trả nợ kèm theo có thể được lưu hồ sơ (ngày lưu hồ sơ như trên thông báo).

Số tiền này là $1,255,577.50 tính tới ngày 6/2/2025 và sẽ tăng cho tới khi tài khoản của quý vị được thanh toán đầy đủ.

Trong thời gian căn nhà của quý vị bị tịch thu thế nợ, quý vị vẫn phải trả các khoản tiền khác (ví dụ như bảo hiểm và thuế) theo giấy vay nợ và khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà của quý vị. Nếu sau này quý vị không tiếp tục trả nợ khoản vay đó, trả thuế cho căn nhà đó, cung cấp bảo hiểm cho căn nhà, hoặc trả các khoản tiền khác theo qui định trong giấy cam kết trả nợ và khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà, người thụ hưởng hoặc người cho vay thế chấp mua nhà có thể yêu cầu quý vị làm như vậy để phục hồi lại tài khoản của quý vị. Ngoài ra, người thụ hưởng hoặc bên cho vay thế chấp mua nhà có thể đưa ra điều kiện tái phục hồi, đó là quý vị phải cung cấp chứng từ đáng tin cậy về việc đã trả tất cả các khoản tịch thu thế nợ trước đó, thuế bất động sản, và lệ phí bảo hiểm hiểm nguy.

Sau khi nhận được yêu cầu bằng văn bản của quý vị, người thụ hưởng hoặc người cho vay thế chấp mua nhà sẽ gửi cho quý vị một bản liệt kê chi tiết toàn bộ số tiền mà quý vị phải trả. Quý vị có thể không phải trả toàn bộ phần chưa trả trong trương mục của quý vị, mặc dù phải trả toàn bộ, nhưng phải trả tất cả các khoản tiền đã quá hạn trả nợ vào thời điểm trả tiền. Tuy nhiên, quý vị và người thụ hưởng hoặc bên cho vay thế chấp mua nhà có thể thỏa thuận bằng văn bản trước thời điểm niêm yết thông báo bán (không được sớm hơn ba tháng sau khi thông báo vi phạm hợp đồng này được lưu hồ sơ) để (ngoài các việc khác) (1) gia hạn thêm thời gian khắc phục tình trạng quá hạn trả nợ bằng cách chuyển nhượng căn nhà hoặc theo cách khác; hoặc (2) sắp xếp kế hoạch trả góp để khắc phục tình trạng vi phạm hợp đồng của quý vị; hoặc cả (1) và (2).

Sau khi hết khoảng thời gian được nhắc tới trong đoạn đầu tiên của thông báo này, trừ khi số tiền bị tịch thu thế nợ hoặc có thỏa thuận riêng bằng văn bản giữa quý vị và chủ nợ cho phép gia hạn thêm thời gian, theo luật quý vị chỉ có quyền ngừng việc bán căn nhà của quý vị bằng cách trả toàn bộ số tiền mà chủ nợ yêu cầu.

Để biết số tiền mà quý vị phải trả, hoặc để thu xếp việc trả tiền nhằm ngăn chặn tình trạng tịch thu nhà thế nợ, hoặc nếu căn nhà của quý vị đang bị tịch thu thế nợ vì bất kỳ lý do nào khác, liên lạc:

Fortra Law (f/k/a Geraci LLP)
20 Pacifica, Suite 300
Irvine, CA 92618
(949) 954-6092

Nếu có thắc mắc, quý vị nên liên lạc với một luật sư hoặc cơ quan chính phủ có thể giúp bảo hiểm cho khoản vay của quý vị.

Cho dù căn nhà của quý vị hiện đang bị tịch thu thế nợ của quý vị, quý vị có thể chào bán căn nhà đó, với điều kiện việc bán nhà phải kết thúc trước khi kết thúc thủ tục tịch thu nhà thế nợ.

Xin nhớ, QUÝ VỊ CÓ THỂ MẤT CÁC QUYỀN HẠN PHÁP LÝ NẾU KHÔNG HÀNH ĐỘNG NGAY.

Nếu muốn có thêm bản sao của thông báo này, quý vị có thể gọi (949) 954-6092.