1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNIT 53,                               No. 2:25-cv-02591-DJC-CSK

12                    Plaintiff,

13          v.                              ORDER

14   PACT Capital, et al.,

15

16                    Defendants.

17

18          Pending before the Court is Plaintiff's Motion for Temporary Restraining Order

19   and Motion for Preliminary Injunction.  Plaintiff seeks injunctive relief preventing

20   Defendants from commencing with foreclosure proceedings on the subject property

21   pending adjudication on Plaintiff's two ongoing cases involving the subject property.

22   Defendants contend that the sale should be allowed to proceed because Plaintiff fails

23   to establish a likelihood of success on the merits.  For the reasons discussed below,

24   the Court DENIES Plaintiff's Motion.

25                              **BACKGROUND**

26          Plaintiff Unit 53 filed the instant suit against Defendants PACT Capital, Z Blinds

27   Company, SA9 Properties, Levon Zekian and Sam Behpoor seeking avoidance of a

28   promissory note and deed of trust on the real property located at 3515 S. Hwy 99,

                                        1

1   Stockon, California 95215 ("the Property").  The Property is also the subject of a

2   related case involving Plaintiff, *Unit 53 v. RRI,* No. 2:24-cv-01718-DJC-CSK.[1]

3          The dispute here stems from a lease agreement between Plaintiff and Run

4   Roadlines Inc. ("RRI") on which RRI is alleged to have defaulted.  (Meesters Decl. (ECF

5   No. 7-2) ¶¶ 3,6; (ECF No. 7-2, Ex. A).)  In an attempt to reconcile the default, Plaintiff

6   and RRI entered into an Option Agreement for Deed of Trust on Real Estate.

7   (Meesters Decl. ¶ 7; (ECF No. 7-2, Ex. B).)  Under this Option Agreement, RRI granted

8   Plaintiff the exclusive option to secure a deed of trust on the Property.  (*Id.*)  Plaintiff

9   sought to exercise its option but alleges that RRI never executed a deed of trust in

10  favor of Plaintiff and instead issued a deed of trust on the Property to Farmers &

11  Merchants Bank ("FMB").  (Meesters Decl. ¶¶ 8–9.)  Although RRI told Plaintiff that

12  Plaintiff's lien on the Property could go into effect once FMB removed its lien, Plaintiff

13  sought, and obtained, a Personal Guaranty supporting RRI's lease obligations.

14  (Meester Decl. ¶¶ 9–11; (ECF No. 7-2, Ex. E).)

15         Around the same time, RRI is alleged to have sought a loan for the purpose of a

16  cash-refinance of the FMB loan from Defendant PACT Capital.  The FMB loan was in

17  the amount of $500,000 and was supposed to be for a larger loan but ended up being

18  only $500,000.  (Mortanian Decl. (ECF No. 15-4) ¶ 6.)  RRI needed to pull more cash

19  out of the Property to cover a short term cashflow crunch.  (*See id.*)  Defendant PACT

20  Capital sent RRI a Letter of Intent providing financing in the principal amount of

21  $1,600,000 for twelve months with the Property as collateral.  (*Id.* ¶¶ 8–10; (ECF No.

22  15-4, Ex. 2).)  As part of the conditions for approval, Defendant PACT Capital required

23  Manpreet Randhawa (one of the owners and operators of RRI) to submit financial

24  statements.  (Mortanian Decl. ¶ 11.)

25         According to Defendant PACT Capital, over a three-month review period, no

26  obligations to Plaintiff were revealed.  (*Id.* ¶¶ 13–15.)  Additionally, Defendant PACT

27

28

[1] For purposes of this Motion, "Defendant Z Blinds" refers to Defendants Z Blinds, SA9, Zekian and Behpoor.

1  Capital learned that the Property was leased to third-party tenants, and in light of

2  those third-party leases, added a condition that the Property be vested in single

3  purpose entity.  (*Id.* ¶¶ 15, 19.)  Randhawa formed 3515 Hwy 99, which is the entity

4  that became the borrower under the PACT Capital loan.  (*Id.* ¶ 20; Meesters

5  Decl. ¶ 12.)  A Grant Deed was executed by Randhawa on behalf of RRI to deed the

6  Property to 3515 Hwy 99.  (Mortanian Decl. ¶ 21.)  The final loan was for $1,200,000

7  secured by the Property.  (*Id.* ¶ 23.)

8        The deed of trust was recorded in favor of Defendant PACT Capital and an

9  Assignment to Defendants Z Blinds, SA9 Properties, Zekian and Behpoor took place,

10  and they are the current note holders.  (*Id.* ¶¶ 28–31.)  On July 11, 2025, Plaintiff

11  became aware of the Notice of Default filed by Defendant Z Blinds, which states that

12  the Property is in foreclosure because of 3515 Hwy 99's default on obligations

13  between RRI and Defendant PACT Capital.  (Hughes Decl. (ECF No. 7-3) ¶ 11; Mot.

14  TRO (ECF No. 7) at 5.)  According to the statutory framework, a Notice of Sale may be

15  issued on September 22, 2025, and the earliest possible date for a foreclosure sale is

16  October 14, 2025.  (Mot. TRO at 10.)  In the related *Unit 53 v. RRI* case, the parties are

17  filing briefing on the terms of the default judgment as ordered by Judge Kim, and a

18  motion to intervene is pending.  .

19        Plaintiff's Complaint against Defendants bring two causes of action for

20  avoidance of intentional fraudulent lien and avoidance of constructive fraudulent

21  obligation and lien under the California Uniform Voidable Transactions Act.  Plaintiff

22  seeks temporary and preliminary injunctive relief to prevent the sale that could be

23  scheduled as early as October 14, 2025, while the merits of the case are pending.

24  Defendants filed an Opposition (Opp'n (ECF No. 15)), and Plaintiff filed a Reply (Reply

25  (ECF No. 17)).  The Court heard oral argument, and the Parties submitted

26

27

28

3

1    supplemental briefing (Def Supp. Brief (ECF No. 19); Plaintiff Supp. Brief (ECF No.

2    20)).[2]

3                                    **LEGAL STANDARD**

4            In determining whether to issue a temporary restraining order, courts apply the

5    factors that guide the evaluation of a request for preliminary injunctive relief: (1)

6    likelihood of success on the merits; (2) irreparable harm in the absence of preliminary

7    relief; (3) the balance of equities; and (4) the public interest.  *See Winter v. Nat. Res.*

8    *Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *see Stuhlbarg Int'l Sales Co. v. John D. Brush &*

9    *Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001) (explaining that the analysis for temporary

10   restraining orders and preliminary injunctions is "substantially identical").  "[I]f a

11   plaintiff can only show that there are 'serious questions going to the merits' – a lesser

12   showing than likelihood of success on the merits – then a preliminary injunction may

13   still issue if the 'balance of hardships tips <u>sharply</u> in the plaintiff's favor, and the other

14   two *Winter* factors are satisfied.'"  *All. for the Wild Rockies v. Pena,* 865 F.3d 1211,

15   1217 (9th Cir. 2017) (citations omitted) (emphasis in original).

16                                    **DISCUSSION**

17   **I.      Likelihood of Success on the Merits**

18           Plaintiff brings two claims against Defendants for avoidance of intentional

19   fraudulent lien and avoidance of constructive fraudulent obligation and lien under the

20   California Uniform Voidable Transactions Act.

21           "The purpose of the UVTA is to prevent debtors from placing, beyond the reach

22   of creditors, property that should be made available to satisfy a debt" by transferring

23   that property to others.  *Chen v. Berenjian,* 33 Cal. App. 5th 811, 817 (2019) (citation

24   _____

25   [2] Defendants request judicial notice of four documents: a Deed of Trust, Assignment of Leases and
     Rents, Fixture Filing and Security Agreement recorded in the San Joaquin County Recorder;

26   Assignment of Deed of Trust, recorded in the San Joaquin County Recorder; Notice of Default and
     Election to Sell Under Deed of Trust recorded in the San Joaquin Recorder; and a Deed of Trust,

27   Security Assignment, Fixture Filing and Assignment of Leases and Rents (Commercial Yard) recorded in
     the San Joaquin County Recorder.  (ECF No. 15-1).  The Court GRANTS Defendants' request under FRE

28   201(b)(2).

                                         4

1   omitted).  The UVTA provides two theories under which a creditor may set aside a

2   transfer as fraudulent: actual or constructive.  *See id.* §§ 3439.04(a)(1)–(a)(2);

3   3439.05(a).  A transfer or obligation is not voidable for actual intent "against a

4   person that took in good faith and for a reasonably equivalent value given the

5   debtor or against any subsequent transferee or obligee."  *Id.* § 3439.08(a).  Whether a

6   transfer is made with fraudulent intent and whether a transferee acted in good faith

7   and gave reasonably equivalent value within the meaning of section 3439.08(a) are

8   questions of fact.  *See Annod Corp. v. Hamilton & Samuels,* 100 Cal. App. 4th 1286,

9   1294 (2002).

10      **A.  Actual Fraud**

11      Plaintiff claims that the note and deed of trust held by Defendants was issued

12   by 3515 Hwy 99 to hinder, delay, or defraud Plaintiff's collection efforts.  Defendants

13   PACT Capital and Z Blinds deny participating in any such fraud and contend that they

14   are good faith actors.

15      Under California Civil Code § 3439.04(a)(1), a transfer is actually fraudulent

16   when made "[w]ith actual intent to hinder, delay, or defraud any creditor of the

17   debtor."  There are several statutory factors a court may consider in determining

18   whether "actual intent" exists.  *See* Cal. Civ. Code § 3439.04(b).  "No single factor

19   necessarily is determinative, and no minimum or maximum number of factors dictates

20   a particular outcome."  *In re Ezra,* 537 B.R. 924, 931 (B.A.P. 9th Cir. 2015).

21      Here, Plaintiff points to several "badges of fraud": [a]t the time the obligation

22   was incurred, the debtor – 3515 Hwy 99 – had been threatened with suit by [Plaintiff]

23   – indeed, [Plaintiff] filed suit against 3515 Hwy 99 mere weeks after the obligation was

24   incurred; RRI/3515 Hwy 99 were already in the process of securing the refinance

25   transaction and removing/concealing assets from [Plaintiff] while at the same time

26   giving [Plaintiff] a Guaranty of RRI's obligations by Randhawa, their principal; on

27   information and belief, the value of the consideration received by 3515 Hwy 99 was

28   less than reasonably equivalent to the value of the Property, as a substantial portion of

1    the funds received may have gone to pay off the FMB debt owed by RRI; on

2    information and belief, 3515 Hwy 99 was insolvent or became insolvent shortly after

3    the obligation was incurred.  (Mot. TRO at 7–8; Compl. (ECF No. 1) ¶ 35.)  Additionally,

4    because RRI is alleged to have fraudulently transferred the Property, Plaintiff contends

5    that 3515 Hwy 99 cannot include the Property as an asset and thus had no assets at

6    the time the obligation was incurred.  (Mot. TRO at 8; Compl. (ECF No. 1) ¶ 35.)

7         Defendants deny any fraudulent intent on their part and primarily argue that

8    they acted in good faith, such that they should not be held liable.  Under California

9    Civil Code § 3439.08(a), a transfer or obligation is not voidable against a person who

10   took in good faith and for a reasonably equivalent value given the debtor or against

11   any subsequent transferee or obligee.  Defendants have the burden of asserting this

12   defense.  *See* Cal. Civ. Code § 3439.08, Leg. Comm. 1.

13        The Court finds that Defendants have satisfied the good faith requirement for

14   purposes of this Motion.  To show good faith, the transferee cannot have "had

15   fraudulent intent, colluded with a person who was engaged in the fraudulent

16   conveyance, actively participated in the fraudulent conveyance, or had <u>actual

17   knowledge of facts showing knowledge of the transferor's fraudulent intent</u>."  *Nautilus*

18   *Inc. v. Yang,* 11 Cal. App. 5th 33, 37, 44 (2017) (emphasis in original).  Defendants

19   have shown that the purpose of the loan was to refinance RRI's existing deed of trust

20   with FMB and that they conducted due diligence before making the loan.  This due

21   diligence did not uncover any obligation to Plaintiff, who concedes that no deed had

22   been recorded on the Property at this point due to RRI's failure to honor the Option

23   Agreement.  Moreover, Defendants have sufficiently shown that the reason for issuing

24   the loan to 3515 Hwy 99 rather than RRI was because the Property was being leased

25   to third-party tenants.  *See id.* at 47–49 (finding that good faith existed where it was

26   shown that there was no actual knowledge of the transferor's fraudulent intent).

27        Turning to reasonably equivalent value, California Civil Code § 3439.03 states

28   that

1

2
3
4
5

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.[3]

6    To determine whether reasonably equivalent value exists, "the analysis is directed at

7    what the debtor surrendered and what the debtor received irrespective of what any

8    third party may have gained or lost." *Wyle v. C.H. Rider & Fam. (In re United Energy*

9    *Corp.),* 944 F.2d 589, 597 (9th Cir. 1991) (internal quotation marks and citations

10    omitted).[4]   In the context of the California UVTA, reasonably equivalent value must be

11    determined from the creditors' standpoint, not from the debtors'. *Maddox v.*

12    *Robertson (In re Prejean),* 994 F.2d 706, 708 (9th Cir. 1993).

13            According to Defendants, reasonably equivalent value exists here

14    because Defendant PACT Capital issued a $1,200,000 loan to 3515 Hwy 99, which

15    was single purpose entity that Defendant PACT Capital requested be formed given

16    the third-party tenants.  (Mortanian Decl. ¶¶ 19, 20.)  Defendant further contends that

17    RRI received $1,200,000 of consideration from 3515 Hwy 99 in exchange for the

18    Property, which has an estimated value of up to $2,200,000.  (Def. Supp. Briefing at 4.)

19    The purpose of the loan was represented as a business purpose loan to refinance

20    RRI's existing deed of trust with FMB, and the FMB loan was ultimately paid off with

21    the loan funds.  (Mortanian Decl. ¶¶ 4–6, 32; (ECF No 15-4, Exs. 1–2; 12)).)  The

22    Property was provided as collateral for the loan to Defendant PACT Capital, (ECF No.

23

24
25
26

[3] The code section also indicates that "a transfer for security is ordinarily reasonably equivalent value notwithstanding a discrepancy between the value of the asset transferred and the debt secured, since the amount of the debt is the measure of the value of the interest in the asset that is transferred." Cal. Civ. Code § 3439.03.

27
28

[4] The Ninth Circuit analyzed California's fraudulent conveyance statute and the Bankruptcy Code's fraudulent transfer provisions contemporaneously because the two are similar in form and substance. *Id.* at 594.

15-4, Exs. 2, 9, 15) and had lease income underpinning the value of the Property such that if Defendants PACT (or whoever it assigned the deed to) were to foreclose, the income provided cashflow that would be a return on investment in the short-term and eventually impact the sales price of the Property.  (Def. Supp. Brief at 3–4.)   In the Ninth Circuit's *In re Northern Merchandise Inc.* decision*,* 371 F.3d 1056 (9th Cir. 2004), the defendant provided a loan to a newly formed company, which became the debtor.  Later that year, the company sought a second loan from the defendant to provide it with working capital.  *Id.* at 1057.  As the defendant determined, the company's financial performance did not warrant an additional direct loan, but agreed to loan the money to company's shareholders with the understanding that they would allow the company to use the money to fund its business operations.  *See id.*  The transaction was documented as a loan to the shareholders, who turned the funds to the company, although the defendant ultimately deposited the loan money directly into the company's account.  *See id.* at 1057–58.  The company, in turn, gave the defendant a security interest in its inventory.  *See id.* at 1058.  When the company ceased doing business, the defendant received the proceeds from the sale of the company's inventory to satisfy the loan to the shareholders.  *Id.*

In rejecting the company's bankruptcy trustee's argument that the grant of the security interest and the transfer of the inventory sale proceeds to the defendant constituted fraudulent transfers under 11 U.S.C. § 548[5], the Ninth Circuit explained that "[a]lthough [the company] was not a party to the [second] loan, it clearly received a benefit from that loan" when the defendant deposited the loan money into the company's account.  *Id.* at 1059.  This is because "reasonably equivalent value can come from one other than the recipient of the payments" in what is known as the indirect benefit rule.  *Id.* at 1058 (citation omitted).  Ultimately, the court reasoned that

---

[5] Section 3439.03's definition of "value" is "adapted from Section 548(d)(2)(A) of the Bankruptcy Code." Cal. Civ. Code. § 3439.03, Leg. Comm. 2.

1  the primary focus of section 548 is on the net effect of the transaction on the debtor's

2  estate and the funds available to the unsecured creditor.  *Id.* at 1059.

3        Here, Plaintiff argues that because 3515 Hwy 99 was the entity that engaged in

4  the transaction with Defendant PACT Capital, the fact that it is unclear whether 3515

5  Hwy 99 received any part of the loan means that there was no reasonably equivalent

6  value.  However, this description, while not incorrect, appears to mischaracterize the

7  nature of the transaction.  Defendant PACT Capital required the establishment of

8  3515 Hwy 99 after discovering that the Property was leased to third-party tenants in an

9  effort to protect its interest.  But as described above, the purpose of the loan was

10  consistently represented as refinancing RRI's FMB lien.  To ultimately receive the loan,

11  RRI transferred the Property to 3515 Hwy 99, which was valued at around $2,000,000.

12  Understanding the transaction this way, Defendants have met their burden of

13  establishing reasonably equivalent value, as RRI received the PACT loan in exchange

14  for a Deed of Trust on the Property.  *See In re All American Bottled Water Corp.,* No.

15  3:06-bk-43133-PBS, 2009 WL 722994, *4–5 (Bankr. W.D. Wash. 2009), *aff'd*, 404 Fed.

16  Appx. 111 (9th Cir. 2010) (noting that "it is proper under appropriate circumstances to

17  evaluate a series of transactions as a whole in determining whether reasonably

18  equivalent value was received.").  It also appears from the Letter of Intent that 3515

19  Hwy 99 was to be owned by RRI such that the ultimate net value does not change.

20  (ECF No 15-4, Ex. 2).  Moreover, the fact that a benefit was received indirectly is not

21  dispositive.  Accordingly, the Court finds that Defendants have met their burden of

22  showing that the good faith exception applies such that Plaintiff has not shown serious

23  questions or a likelihood of success on the merits as to the actual fraud claim.

24      **B.  Constructive Fraud**

25        Plaintiff also brings a claim for constructive fraud against Defendants.

26  Constructive fraud under the UVTA can be shown in two ways.  The first instance is

27  when the debtor makes a transfer or incurs an obligation

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: (A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction [or] (B) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Cal. Civ. Code § 3439.04(a)(2).  The second instance is when the debtor makes a transfer or incurs an obligation "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."  Cal. Civ. Code § 3439.05.  These subdivisions differ in that the first can void a transfer as to a creditor regardless of whether the creditor's claim came before or after the transfer whereas the second voids a transfer for a creditor whose claim arose before the transfer was made.  *See Potter v. All. United Ins. Co.,* 37 Cal. App. 5th 894, 904 (2019).

Plaintiff contends that 3515 Hwy 99 incurred the obligation and issued the lien without receiving reasonably equivalent value in exchange because all or a substantial portion of the funds received in exchange went to satisfy RRI's debt to FMB.  As described above, it appears that reasonably equivalent value was exchanged.  The PACT loan's purpose was to refinance the FMB lien.  (*See* Mortanian Decl. ¶ 32).  Because reasonably equivalent value is required to make a showing of constructive fraud, and because Defendant has met its burden in showing reasonably equivalent value, the Court finds that there are no serious questions or a likelihood of success on the merits.

## II.    Irreparable Harm

Next, a plaintiff must show that "he is likely to suffer irreparable harm in the absence of preliminary relief[.]"  *Winter,* 555 U.S. at 20.

1    Plaintiff argues that it will suffer irreparable harm if the foreclosure is allowed to

2    proceed because: (1) it will lose the opportunity to satisfy the judgment it is about to

3    obtain in the related case against RRI, Randhawa and 3515 Hwy 99, who are alleged to

4    be insolvent; (2) if the Property is purchased by a third-party at foreclosure, any

5    remaining equity will be wiped out; and (3) the loss of the Property would eliminate

6    any claims Plaintiff has against Defendants.  Defendants argue that irreparable harm

7    does not exist because the Property at issue is not unique such that money damages

8    would be sufficient, and that Plaintiff can bid at the foreclosure sale to satisfy its debts.

9    Generally, the loss of real property is considered unique.  That said, the

10   foreclosure sale here involves the loss of an investment property, rather than a

11   residential property.  *Compare Vitale v. Wells Fargo Bank Nat'l Ass'n,* No. 5:23-cv-

12   06019-BLF, 2023 WL 8720144, at *2 (N.D. Cal. Dec. 18, 2023) (explaining that some

13   courts have found irreparable injury existed due to the threatened loss of residential

14   property) *with Field v. Genova Cap. Inc.,* No. 2:20-cv-09563-ODW, 2020 WL 6161450,

15   at *3 (C.D. Cal. Oct. 21, 2020) (finding that where the facts demonstrated that the

16   property at issue was a rental property rather than the moving party's primary

17   residence, there was no irreparable injury).  Accordingly, Plaintiff is threatened with an

18   economic loss that could be compensated with damages.  "Mere financial injury,

19   however, will not constitute irreparable harm if adequate compensatory relief will be

20   available in the course of litigation."  *Goldie's Bookstore, Inc. v. Superior Court,* 739

21   F.2d 466, 471 (9th Cir. 1984).  Because the Property does not appear to be "unique"

22   such that irreparable injury supports preventing the foreclosure sale, monetary

23   damages would sufficiently rectify Plaintiff's injury.

24   However, Plaintiff's argument that it faces irreparable injury due to RRI's

25   insolvency is a closer call.  In *Grupo Mexicano v. Alliance Bond Fund,* 527 U.S. 308

26   (1999), the Supreme Court held that a district court lacked authority to issue a

27   preliminary injunction preventing petitioners from disposing of their assets pending

28   adjudication of respondents' contract claim for money damages because such remedy

1   was historically unavailable from a court of equity.  The Ninth Circuit has since

2   interpreted *Grupo Mexicano* to "exempt[] from its proscription against preliminary

3   injunctions freezing assets cases involving bankruptcy and fraudulent conveyances,

4   and cases in which equitable relief is sought."  *Wimbledon Fund, SPC Class TT v.*

5   *Graybox, LLC,* 648 Fed. Appx. 701, 702 (9th Cir. 2016) (citing *In re Focus Media Inc.,*

6   387 F.3d 1077, 1085 (9th Cir. 2004) and *Johnson v. Couturier,* 572 F.3d 1067, 1084

7   (9th Cir. 2009)).  The Ninth Circuit also affirmed the district court's grant of a

8   preliminary injunction in a fraudulent conveyance case where the plaintiff sought

9   equitable relief.  *Wimbledon Fund,* 648 Fed. Appx. at 702 ("Because this is a

10  fraudulent conveyance case and one in which [plaintiff] sought equitable relief, *Grupo*

11  *Mexicano* does not bar a preliminary injunction.").[6]

12       Here, Plaintiff seeks equitable relief against Defendants in the form of avoiding

13  an allegedly fraudulent lien.  (*See* Compl. at 11.)  In the context of the instant motions,

14  Plaintiff does not seek an asset freeze but enjoinment of the foreclosure sale on the

15  Property on the grounds that RRI, Randhawa and 3515 Hwy 99 are insolvent.

16  Defendants here have expressed an intent to proceed with the foreclosure sale on the

17  Property, thereby making it less likely that the Plaintiff could satisfy the judgment with

18  the Property.  Defendants do not explicitly address the issue of RRI, Randhawa and

19  3515 Hwy 99's insolvency in the context of irreparable harm but argue that RRI and

20  3515 Hwy 99 were not insolvent based on most of 3515 Hwy 99's payments being

21  made and the results of the underwriting process with RRI.       While it seems that

22  the Property here is not unique such that a foreclosure sale would constitute

23  irreparable harm, the Court is ultimately persuaded by the Plaintiff's argument that

24  recovery of their judgment in the related case would be hindered as a result of

25  ─────────────────────────

26  [6] While not addressed by the parties, from the Court's review of the California UVTA, it appears that
     creditors may recover judgment for the value of the asset transferred subject to certain conditions.  *See*
     Cal. Civ. Code § 3439.08(b)(1); *see also MACH-1 RSMH, LCC v. Darras,* 103 Cal. App. 5th 1288, 1300
27  (2024) (noting that the UVTA's remedies may also include limited monetary damages against certain
     transferees).
28

1   insolvency.  Thus, the foreclosure sale could constitute irreparable harm such that this

2   factor weighs in favor of granting injunctive relief.

3   **III.    Balance of Hardships**

4        Plaintiff must also establish that the balance of equities tips in its favor.  *Winter,*

5   555 U.S. at 20.  To assess this factor, the district court must "balance the interests of all

6   parties and weigh the damage to each."  *Stormans, Inc. v. Selecky,* 586 F.3d 1109,

7   1138 (9th Cir. 2009) (citation omitted).

8        Here, Plaintiff contends that it would suffer a loss of its interest in the Property

9   stemming from the Option Agreement, a loss of its ability to use a sale of the Property

10  to satisfy a portion of the money judgment it seeks against RRI, irreversibility of a

11  foreclosure sale to a bona fide purchaser, and an inability to recover money damages

12  due to a loss of a lien position on a unique parcel of property.  Defendants argue that

13  the balance of hardships tips in their favor because it will face direct impairment of

14  secured rights and financial loss.  Defendants also argue that Plaintiff is not a priority

15  lien on the Property.

16       The reality of the circumstances here is that both parties are likely to face some

17  hardship in the event or absence of injunctive relief.  But considering that Defendants

18  have met their initial burden of showing they acted in good faith, made a good faith

19  effort to conduct due diligence in the underwriting process when engaging with RRI

20  and 3515 Hwy 99, and acted promptly in recording their interest in the Property, the

21  Court finds that this factor slightly weighs in Defendants' favor.

22  **IV.    Public Interest**

23       Lastly, district courts are to consider the public interest implicated by the

24  injunction.  *Stormans,* 586 F.3d at 1138.  Where an injunction "is narrow, limited only

25  to the parties, and has no impact on non-parties, the public interest will be 'at most a

26  neutral factor in the analysis rather than one that favor[s] [granting or] denying the

27  preliminary injunction.'"  *Id.* at 1138–39 (citing *Bernhardt v. L.A. County,* 339 F.3d 920,

28

13

1  931 (9th Cir. 2003)).  Where the impact of an injunction reaches beyond the parties

2  then the public interest is relevant to whether injunctive relief is granted.

3        Here, Plaintiff cites to authority supporting the contention that it is in the public

4  interest to enforce judgments and prevent the further dissipation of fraudulently

5  transferred assets.  Defendants argue that the public interest is harmed if the Court

6  enjoins first position lenders who lent in good faith based on a recorded senior

7  interest.  That said, the injunctive relief sought here appears to be narrow and limited

8  to the parties in the suit.  Accordingly, the Court considers this to be a "neutral" factor.

9  *See id.* at 1138.

10                                **CONCLUSION**

11        While Plaintiff has made a showing that it may face irreparable injury, balancing

12  the *Winter* factors, and particularly in light of this Court's conclusion that Plaintiff has

13  not shown a likelihood of success on the merits, the Court concludes that Plaintiff is

14  not entitled to injunctive relief at this stage of the proceedings.  Accordingly, Plaintiff's

15  Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 7) is

16  DENIED.

17

18        IT IS SO ORDERED.

19  Dated:    **October 15, 2025**

    Hon. Daniel J. Calabretta
20  UNITED STATES DISTRICT JUDGE

21

22

23  DJC6 – UNIT53_25cv02591.tro

24

25

26

27

28

                                        14